PEDRO MUÑOZ JIMÉNEZ, demandante y apelado, *v.* R. FABIÁN & CO., SUCRS., y MARYLAND CASUALTY CO., demandadas y apelantes.

Núm. 10149.—*Sometido:* Abril 3, 1950. *Resuelto:* Mayo 31, 1950.

486

F. *Prieto Azúar*, abogado de las apelantes; *Ruiz Suria & Ruiz Suria*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Esta acción de daños y perjuicios fué incoada contra R. Fabián & Co., Sucrs. y la Maryland Casualty Co. por el demandante Pedro Muñoz Jiménez, casado con Providencia Amato, para beneficio de la sociedad de gananciales entre ellos existente. La corte inferior, al declarar con lugar la demanda, hizo constar, entre otras, las siguientes conclusiones de hecho:

"5. El día 5 de mayo de 1947, como a las once de la mañana, doña Providencia Amato de Muñoz entró a la tienda La Bayamonesa a comprar un trajecito de niño y unos encajes. Al entrar al referido establecimiento llevaba un paquete de telas que había comprado en otra tienda. La señora Amato de Muñoz entró por la puerta de la derecha y preguntó a un joven sobre los artículos que buscaba. Después de orientada siguió a mano izquierda por un corredor, pero de pronto falseó y cayo de frente, boca abajo, contra las losas del piso inferior desde el piso de losetas blancas y negras, recibiendo golpes en la nariz,

en el hombro derecho con la punta de un mostrador y en las espinillas con el borde del escalón. Recibió además golpes en los pómulos y en el estómago. Para ir de un lado a otro del establecimiento tenía que pasar por el referido corredor. *Al ocurrir el accidente, la señora Amato de Muñoz miraba hacia el frente, no hacia los lados.*  . . .

"·   .   .   .   .   .   .

"7. Esta señora nunca había pasado por el mencionado corredor por lo que supuso que el piso estaba al mismo nivel, que no tenía escalón alguno. Anteriormente había estado una o dos veces en La Bayamonesa, pero nunca en la parte trasera o interior del mismo. A ella le pareció que el piso estaba al mismo nivel debido a que la mercancía de los escaparates estaba a la misma altura.

"8. El sitio de la caída consistía y consiste de un corredor o pasillo, abierto al tránsito de los parroquianos del establecimiento, que conecta las dos alas del mismo, formando una doble escuadra (Véase el Exh. 'D'). Dicho pasaje era y es bastante estrecho. A sus lados había mostradores y vitrinas de cristal y sobre los mostradores y vitrinas gran cantidad de toallas, colchas, ropa de cama y otra mercancía colocada aparentemente en la misma altura o nivel.

"9. *La mercancía no obstruía la vista y el corredor estaba expedito y sin obstáculos a no ser por un escalón que estaba y está localizado a la mitad del mismo, consistente dicho escalón de dos bajadas* (Véase el Exh. 'D'), *bien construído, cómodo y sin pasamanos ni aviso de clase alguna que indicara su existencia en dicho sitio.* La huella del escalón tiene 18 pulgadas y las contrahuellas 5¼″ y 5⅛″ respectivamente.

"10. El escalón une los dos pisos del corredor, uno de los cuales, o sea el superior, está hecho de losetas blancas y negras de 8″ × 8″, igual que las losetas del escalón, estando construído el piso inferior de cerámica blanca. *En otras palabras, un piso se ve blanco y negro y el otro se ve blanco. La diferencia de color entre uno y otro piso se nota a una distancia de 12 pies antes de llegar al escalón si el corredor está alumbrado y uno va mirando hacia el piso.* (Véase acta de la inspección ocular.) El piso superior queda en el ala izquierda. La diferencia entre piso y piso es de 10″.

"11. Dicho corredor era alumbrado por 4 lámparas fluorescentes de dos tubos cada una, de 48″ cada tubo. *Una de estas*

*lámparas estaba colocada casi sobre el escalón.* Debido a que la luz natural de la tienda es muy pobre, era la costumbre de los encargados del establecimiento encender todas las lámparas (12 en total) tan pronto se abría el mismo, permaneciendo encendidas hasta que era cerrado por la tarde.

"*En relación con las luces, la evidencia es contradictoria:* la del demandante tendió a probar que la tienda estaba alumbrada por la luz natural mientras que la de la demandada, que todas las luces del establecimiento estaban encendidas. De la inspección ocular que practicáramos nos inclinamos a crear *y así lo resolvemos que las luces de la tienda y especialmente las del corredor estaban encendidas.* La luz natural que llega hasta el corredor es tan poca que cuando las luces del corredor están apagadas es casi imposible transitar por el mismo, tan grande es la obscuridad que allí reina, y menos aún trabajar en él. *Sería inexplicable que los dueños del establecimiento mantuvieran el corredor a obscuras.*" (Bastardillas nuestras.)

Aun cuando incluída entre las conclusiones de derecho, la corte inferior también hizo constar lo siguiente:

"III. Hemos considerado probado que el escalón fué construído de acuerdo con la técnica; *que no ofrecía peligro alguno por su construcción y que tampoco lo ofrecía si estaba suficientemente alumbrado; que tanto el corredor como el escalón estaban bien alumbrados;* que la mercancía colocada en los escaparates, vitrinas y mostradores alrededor del corredor *no obstruía la vista y que dicho corredor, con la sola excepción del escalón, estaba expedito. También se probó que una persona que transitara por dicho corredor, de oeste a este podía notar la diferencia de colores del piso así como el escalón a una distancia de 12 pies antes de llegar al escalón.*

"Por otra parte se demostró que la mercancía colocada sobre las vitrinas y mostradores, dada la altura uniforme a que llegaba, parecía estar colocada en el mismo plano y que por tal motivo la referida señora, quien nunca había pasado por dicho corredor e ignoraba la existencia del escalón, *supuso* que el piso no tenía obstrucción alguna sino que estaba en su totalidad al mismo nivel; que mientras transcurría por el corredor *no miraba hacia el piso y que no existía anuncio o aviso alguno que indicara a los parroquianos de la existencia del escalón.*" (Bastardillas nuestras.)

Después de exponer los principios generales en cuanto a la obligación legal que tiene el dueño de un establecimiento comercial de tenerlo en condiciones razonables de seguridad para los parroquianos que expresa o implícitamente son invitados a penetrar en el mismo, así como avisar de cualquier *peligro latente o escondido* que pudiera existir y que dicho dueño no es responsable de los daños y perjuicios que resulten de condiciones peligrosas que sean obvias o conocidas por la persona lesionada, ya que no siendo un asegurador de su parroquiano sólo le debe un grado ordinario de cuidado, y también exponer la regla general aplicable a la señora Muñoz de que debió ejercitar un cuidado razonable y observar todo aquello que fuese aparente a la vista mientras caminaba por la tienda, llegó a las siguientes conclusiones de derecho:

"La existencia del escalón, considerada aisladamente, *no sería suficiente para basar en ella una imputación de negligencia por parte de la referida demandada (Albachten* v. *Golden Rule,* 160 N.W. 1012), pero considerada en relación con todas las circunstancias que rodean este caso, *especialmente la que el despliegue de mercancía en todos los lados del corredor atraía las miradas de los parroquianos,* lo hacía peligroso para un parroquiano que, como la señora Amato de Muñoz, estuviese ignorante de su existencia.

". . . . . . .

"Mediando todas dichas circunstancias, la demandada estaba en el deber de poner a sus parroquianos sobre aviso de la existencia del escalón para que éstos pudiesen evitar el peligro. *O'Brien* v. *Tatum,* 84 Ala. 186, 4 So. 158 y demás casos citados en la anotación antes mencionada, a la página 189.

". . . . . .

"Por los razonamientos que acabamos de exponer resolvemos que la demandada en cuestión fué negligente en este caso *al no tener algún anuncio o aviso que indicara de la presencia del escalón a los parroquianos* y especialmente a aquéllos que ignoraban su existencia y que dicha negligencia es la causa directa e inmediata del accidente y en su consecuencia de las lesiones, daños y perjuicios que sufriera la señora Muñoz.

"Desde luego que de no haber mediado la circunstancia de que la mercancía en exhibición en el corredor *atrajo la atención*

*de la señora Muñoz,* y la de que ella desconocía que existiera un escalón en el corredor, hubiéramos dudado mucho antes de resolver que la predicha demandada fué negligente al no tener algún anuncio o aviso que indicara la existencia del escalón ya que éste estaba a la vista." (Bastardillas nuestras.)

Como consecuencia dictó sentencia condenando a las demandadas a pagar al demandante la suma de $3129.50 en concepto de daños y perjuicios, $300 para honorarios de abogado, más las costas.

No conformes las demandadas con la sentencia, apelaron y en este recurso señalan cinco errores. Excepto el quinto que se refiere a la cuantía de la indemnización concedida, los otros cuatro levantan, en distinta forma, una sola cuestión, a saber, que aceptando como correctas las conclusiones de hecho a que llegó la corte inferior, cometió error de derecho al concluir que la demandada R. Fabián & Co. fué negligente al no colocar un aviso indicativo de la presencia del escalón y al no resolver que fué la negligencia de la señora Muñoz la causa próxima del accidente.

No se nos pide, por tanto, que revoquemos la sentencia dictada en este caso debido a manifiesto error en la apreciación de la prueba por la corte inferior sino más bien que apliquemos la regla de que "Una cosa es la apreciación de la prueba y otra es el efecto legal de la misma". *Rodríguez* v. *Pagán,* 67 D.P.R. 345; *Mercedes Bus Line* v. *Tribl. de Distrito,* 70 D.P.R. 690, y aplicándola, tienen razón a nuestro juicio los apelantes.

En las conclusiones de hecho la corte inferior hizo referencia al acta de la inspección ocular que realizó. En ella hizo constar, en parte, lo siguiente:

"(1) Cuando el corredor está alumbrado se nota la diferencia del color del piso, si uno está mirando hacia el suelo; (2) el escalón se nota como a 12 pies de distancia cuando se camina por dicho corredor en dirección este; . . . (5) cuando las luces están apagadas el corredor queda completamente obscuro; (6) el corredor tiene a sus lados y al frente taburetes o vitrinas y luego aparadores, todos llenos de mercancía."

Esta inspección ocular sirvió de base a la corte para resolver que, como cuestión de hecho, el corredor o pasadizo por donde caminaba la esposa del demandante estaba iluminado por varias lámparas fluorescentes, ya que cuando las luces están apagadas dicho corredor queda completamente obscuro; que la mercancía a los lados del corredor no obstruía la vista; que por ser las losetas de uno y otro piso de diferente color, un piso se ve blanco y negro y el otro blanco y que el escalón se nota a 12 pies de distancia. Si todo esto es así y la corte consideró probado además que, al ocurrir el accidente, la señora Muñoz "miraba hacia el frente, no hacia los lados", y que la mercancía colocada en los escaparates, vitrinas y mostradores a los lados del corredor "no obstruían la vista", su conclusión de derecho al efecto de que la existencia del escalón "considerada en relación con todas las circunstancias que rodean este caso, *especialmente la de que el despliegue de mercancía en todos los lados del corredor atraía las miradas de los parroquianos, lo hacía peligroso para un parroquiano que, como la señora Amato de Muñoz, estuviese ignorante de su existencia*", y que en su consecuencia, la demandada fué negligente al no tener algún anuncio o aviso que indicara la presencia del escalón, es completamente errónea. Especialmente es esto así cuando la corte inferior a renglón seguido afirma que "de no haber mediado la circunstancia de que la mercancía en exhibición en el corredor *atrajo la atención* de la señora Muñoz", hubiera dudado mucho antes de resolver que la demandada fué negligente al no tener el aviso que indicara la existencia del escalón "ya que éste estaba a la vista". Es obvio que la corte inferior se contradice pues ya había resuelto, como cuestión de hecho, que la señora Muñoz, al ocurrir el accidente, "miraba hacia el frente, no hacia los lados". De manera que no habiendo mediado la circunstancia apuntada por la corte como base para su sentencia, forzoso es concluir que, como cuestión de derecho, cometió el error señalado.

Erró, además, la corte inferior al enfocar y resolver este caso como uno al que sean aplicables los casos que citó en su opinión, tomándolos, según hizo constar, de la página 189 de la anotación contenida en 33 A.L.R., ya que en los mismos los hechos probados demostraban la existencia de algo en el establecimiento comercial de carácter peligroso, una trampa o escotilla (*trap door*), hoyo, apertura de ascensor, y aun una escalera escondida en alguna forma de la vista de los parroquianos, y lo cual la persona perjudicada desconocía o no pudo tener la oportunidad de evitar caer en el mismo, debido a la negligencia del demandado de mantener tal situación peligrosa en su establecimiento. Ésa no es la situación de hechos en el presente caso. El escalón no constituía, *per se*, peligro alguno, estando alumbrado, como concluyó la corte que lo estaba, todo el establecimiento y especialmente el escalón, pues sobre el mismo estaba colocada una de las lámparas fluorescentes, y ser visible, para cualquier persona que caminara por el corredor, a doce pies de distancia antes de llegar al mismo. La diferencia de color entre las losetas de un piso y otro, era factor adicional para hacer visible el escalón a cualquier persona que caminara hacia el mismo. Más bien son aplicables al de autos algunos de los casos citados, en la anotación mencionada, a la pág. 212, así como aquellos contenidos en las anotaciones posteriores contenidas en 43 A.L.R. 863, 868; 46 A.L.R. 1111, 1112; 58 A.L.R. 136, 141, y 100 A.L.R. 711, 730, que se refieren a accidentes ocurridos en establecimientos comerciales bajo circunstancias similares a las que se probó existían en el presente caso.

Así, por ejemplo, en el de *Haddon* v. *Snellenburg*, 143 Atl. 8, 9 (Pa., 1928) se resolvió que:

". . . No constituye negligencia *per se* o construcción negligente en una tienda u otro sitio público tener un piso a nivel más bajo de pocas pulgadas de otro. Cuando tal diferencia existe el sitio debe estar suficientemente alumbrado artificialmente para que las personas que usen el escalón puedan verlo, a menos que esté alumbrado por la luz natural del día. . . ."

Similar al de autos, en cuanto a la diferencia de color entre los dos pisos, fué el caso de *Cleary* v. *Meyer Bros.*, 176 Atl. 187, 189 (N.J., 1935) en el cual la demandante, al salir del cuarto de servicio de una tienda, frente al cual y a 24 pulgadas existía un escalón de 8 pulgadas de alto, se cayó por suponer, según declaró, que el piso estaba todo a nivel y no haber visto el escalón, y en el que se resolvió que:

"El peso de probar la imputación de negligencia contenida en la demanda recaía en la demandante . . . La prueba demostró que había amplia iluminación a la entrada, que el escalón era blanco y color de rosa mientras que la cubierta del piso más bajo después del escalón era de un diseño grande negro y blanco y no hubo sugestión alguna de que no pudiera distinguirse plenamente del escalón.

"La negligencia es un hecho que debe demostrarse. No se presumirá. Siempre hay una presunción contraria a la negligencia. . . .

"No creemos que hubo suficiente prueba para sostener el veredicto en este caso. . . ."

También en el caso de *Dickson* v. *Emporium Mercantile Co.*, 259 N.W. 375 (Minn., 1935) se declaró sin lugar la demanda, habiendo existido el hecho de la diferencia de color entre los niveles del piso y la debida iluminación del escalón, diciéndose al confirmar la sentencia:

". . . El piso del corredor está cubierto del linóleo color castaño. El piso del lavatorio es de losetas blancas. . . . La demandante entró al lavatorio detrás de otra señora. Estuvo allí poco tiempo y al salir, habiéndose olvidado evidentemente de que había subido el escalón para entrar al lavatorio y asegurando que no sabía 'que el escalón estaba allí', tropezó y cayó sufriendo los daños que reclama en esta acción. El corredor y el lavatorio estaban bien iluminados. No se alega defecto de clase alguna en ningún sitio. Ni se sugiere que el piso del corredor o del lavatorio estuviera resbaladizo o que existiera substancia alguna en los pisos que motivara su resbalón. . . .

". . . La demandada no era una aseguradora de la seguridad de la demandante. Como se dijo en el caso de Albachten, pág. 382 de 135 Minn., 160 N.W. 1012, 1013: 'El dueño de una

tienda está bajo la obligación legal de tenerla y mantenerla en una razonable condición de seguridad para el uso de todos cuando expresa o implícitamente los invita a entrar a la misma.' Esa es la regla general. (Cita.) La cuestión presentada no es nueva. . . ."

Por último, consideramos que el caso de *Boyle* v. *Preketes*, 247 N.W. 763 (Mich., 1933) presenta una situación de hechos casi idéntica al de autos. Los hechos demuestran que una señora entró a una tienda de dulces y restaurant con el propósito de almorzar. Como a treinta pies de la entrada y atravesando un corredor había un escalón que separaba el frente de la tienda de la parte posterior. A un lado del corredor había vitrinas y al otro varias mesas. La demandante al caminar por dicho corredor se cayó al llegar al escalón sufriendo daños. Alegó en su demanda que la negligencia de los demandados consistió en no haber puesto avisos suficientes para poner en conocimiento de sus clientes la diferencia en los niveles de los pisos en las dos secciones de su tienda, la falta de suficiente iluminación del corredor y el escalón y el tener vitrinas atractivas mostrando mercancías en tal forma que distraían la atención de los parroquianos en un sitio que se convertía más peligroso debido al escalón y cambio en el nivel de los pisos. La corte resolvió, pág. 764:

"Si la tienda de los demandados estaba debidamente iluminada, ellos no estaban obligados a poner avisos en los escalones entre las dos secciones de la tienda. Si el sitio estaba suficientemente alumbrado, los escalones mismos constituían aviso a los clientes de los demandados como era posible dar.

"En cuanto a la alegación de la demandante de que su atención fué distraída por la exhibición de la mercancía de los demandados, puede decirse que no había nada fuera de lo corriente en cuanto a la forma o carácter de la exhibición . . . que pueda sostenerse que aminorara el grado de cuidado que la demandante debía ejercitar para su propia seguridad.

"También interpretando el récord en la forma más favorable a la demandante no hay prueba que tienda a sostener la alegación de que estos escalones constituían 'peligros escondidos'.

[Se describe la forma en que estaban construidos los escalones y el contraste de colores.]   Ni las vitrinas a la izquierda ni las mesas a la derecha de la demandante en forma alguna obstruían el alcance de su visión.   . . .

" 'Hace tiempo que se ha reconocido que el caerse por una escalera, cuando el accidente no es imputable a defectos desconocidos u ocultos, pertenece a esa clase de accidentes corrientes que deben imputarse a la falta de cuidado del que lo sufrió.' (Cita.) . . .

"La siguiente cita del caso de Garret, [*Garret* v. *Butterfield Theatres, Inc.,* 261 Mich. 262] 246 N.W. 57, 58, es aplicable al caso presente: 'Distintos niveles en los pisos en edificios públicos y privados, conectados por escalones, son tan comunes, que la posibilidad de su presencia es anticipada por personas prudentes. . . . La situación no demuestra elemento alguno de una trampa.   Una persona razonablemente prudente, que mirara hacia donde iba, hubiera visto el escalón.   El demandado no estaba bajo un deber legal de prevenir que personas descuidadas se causaran daño.   Creemos que el demandado no fué culpable de negligencia.' "   (Lo que aparece en corchetes es nuestro.)

De acuerdo con los hechos que la corte inferior consideró probados en el presente caso cometió error de derecho al concluir que la codemandada fué negligente al no poner un aviso advirtiendo la presencia del escalón en su tienda.   La diferencia de color entre los dos niveles del piso, el alumbrado de la tienda, la ausencia de peligro oculto o patente en el escalón mismo, el hecho de que la mercancía no obstruía la vista del que caminara por el corredor y que el mismo estaba expedito y el hecho adicional de que, tanto la diferencia de color como el escalón, podían verse a una distancia de doce pies, son factores todos que tienden a demostrar, y demuestran a nuestro juicio, que el accidente en este caso se debió al propio descuido de la señora Muñoz al no fijarse y darse cuenta de la presencia del escalón cuando llegó al mismo mientras caminaba por el corredor de la tienda, y que dicho descuido fué la causa próxima del accidente que sufrió.   Ella estaba en el

deber de ejercitar un cuidado razonable en su forma de transitar por la tienda y si así lo hubiera hecho el accidente no hubiera ocurrido.

*Debe revocarse la sentencia dictada por la corte inferior y dictarse otra declarando sin lugar la demanda, con costas.*