ROBERTO SANTOS GONZÁLEZ, peticionario y apelado, *v.* BEATRIZ y JUSTO BERDECÍA, recurridos y apelantes.

Núm. 10637.—*Sometido:* Agosto 26, 1952. *Resuelto:* Septiembre 17, 1952.

*Aníbal Padilla,* abogado de los apelantes; *Luis A. Noriega,* abogado del apelado.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del tribunal.

Roberto Santos González radicó una petición de hábeas corpus en la antigua Corte de Distrito de Ponce (hoy Tribunal Superior) contra Beatriz Berdecía y Justo Berdecía. Alegó sustancialmente en su petición que tiene una hija que responde al nombre de Carmen Magdalia Santos, quien es hija reconocida del peticionario y la recurrida Beatriz Berdecía; que la referida menor se halla actualmente bajo la custodia física del otro recurrido Justo Berdecía, su abuelo materno; que el peticionario es casado con Filomena Ramírez, reside en la calle Santiago Iglesias número 70 del pueblo de Coamo, no tiene hijos con su actual esposa y se encuentra prestando servicios en las fuerzas armadas de Norte América, destacado en Rodríguez Army Hosp. tal, en el Fuerte Brooke, en San Juan, Puerto Rico. Alega además que la permanencia de la antes mencionada menor en poder de los recurridos es nociva, perjudicial y contraria a su bienestar y felicidad, porque (*a*) la niña está obligada a vivir con el recu-

rrido en un medio reducido que ofende su salud y menoscaba su desarrollo físico, (b) los recurridos han demostrado una crasa despreocupación y abandono en cuanto al cuidado y aseo personal y demás atenciones debidas a dicha menor, (c) los recurridos carecen de medios para sufragar los gastos esenciales de la menor y atenderla con el esmero que es debido mientras que el peticionario tiene medios y recursos para hacerse cargo del cuidado y custodia de su hija alojándola en su hogar ya que su actual esposa así lo desea y está dispuesta a otorgarle las atenciones y cuidados como si fuera su propia hija; (d) la recurrida Beatriz Berdecía casó hace algún tiempo y vive en el pueblo de Coamo, careciendo de toda clase de bienes y facilidades económicas para sostener la educación de la menor, motivo por el cual la entregó a su señor padre quien la tiene bajo su custodia y cuidado; (e) el peticionario tiene un hogar constituído actualmente y el ambiente en el mismo es propicio y adecuado para el crecimiento y progreso de la menor pues aunque presta servicios en las fuerzas armadas va todas las semanas a Coamo a ver a su esposa y a tratar de ver también a su hija, (f) el recurrido Justo Berdecía, abuelo de la menor es un hombre de más de 60 años de edad, tiene su esposa y no cuenta con recursos económicos de clase alguna, no pudiendo, debido a su condición física, cuidar debidamente a la menor como lo haría el peticionario, (g) los recurridos han rehusado y rehusan entregar la custodia de la menor al peticionario, privándole del cariño y de su libertad, protección y cuidado de su padre.

Expedido el auto, contestaron los recurridos aceptando que la menor Carmen Magdalia Santos es hija natural reconocida del peticionario Roberto Santos González y de la recurrida Beatriz Berdecía y aceptaron además el estado civil actual del peticionario, su ocupación y sitio de residencia. Negaron que la menor se encuentre bajo la custodia física del recurrido Justo Berdecía y en contrario alegaron que dicha menor y su señora madre vivieron con dicho Justo Berdecía hasta fines del año 1949 porque el peticionario nunca

quiso cumplir en alimentos con dicha menor pero que desde esa fecha la menor se encuentra viviendo bajo el celo, cuidado y atención de su señora madre, la querellada Beatriz Berdecía. Negaron además que la permanencia de la menor en poder de los recurridos sea nociva, perjudicial y contraria a su bienestar y felicidad, alegando en contrario que los recurridos, así como el actual esposo de la querellada Beatriz Berdecía, son pobres y viven humildemente pero conformes, ya que dentro de esa vida humilde tanto ellos como la menor, tienen lo necesario para cubrir sus necesidades y para llevar una vida decente y honrada. Como defensa especial alegaron que el procedimiento iniciado por el peticionario se debe al hecho de haber sido dicho peticionario requerido por la madre de la menor para que le pasara alimentos a ésta, obligación que cumplió por algún tiempo y con la cual no ha cumplido desde hace cinco meses a pesar de mediar una orden de la corte fijándole dicha obligación.

Después de celebrada una vista sobre los méritos del caso la antigua Corte de Distrito de Ponce dictó sentencia declarando con lugar la petición de hábeas corpus y ordenó que los demandados Beatriz Berdecía y Justo Berdecía entreguen la menor Carmen Magdalia Santos al demandante Roberto Santos González, sin excusa ni pretexto alguno y apercibidos de incurrir en desacato si no cumplieren con lo ordenado por la sentencia.

Los demandados apelaron para ante este tribunal e imputan al tribunal inferior la comisión de los siguientes errores:

*"Primer error:* Cometió error el Tribunal inferior al actuar, durante todo el procedimiento, en la vista del juicio, en forma de prejuicio, pasión y parcialidad en contra de la parte recurrida.

*"Segundo error:* Cometió error el Tribunal inferior al fundamentar su sentencia, en conclusiones contrarias a la prueba sometida, por ambas partes, en la vista del caso.

*"Tercer error:* Cometió error el Tribunal al darle al concepto de 'patria potestad', conforme al artículo 152 del Código Ci-

vil, ed. 1930, un alcance viejo y arcaico, repugnante al concepto del cristianismo.

*"Cuarto error:* Cometió error el Tribunal inferior al usar el poder de 'parens patriae', ejercitándolo con olvido de que el factor dominante es el bienestar de la hija.

*"Quinto error:* Cometió error el tribunal inferior al resolver el caso contrario a la Ley y la Jurisprudencia."

El apelado no ha radicado alegato.

Discutiremos conjuntamente los errores segundo, tercero, cuarto y quinto porque todos van dirigidos a la prueba. Esto hace necesario que hagamos un resumen de dicha prueba.

Veamos la del demandante. Esta prueba consistió de su propio testimonio y en el de su esposa Filomena Ramírez de Santos.

*Roberto Santos González,* el peticionario, declaró que es casado y reside en la calle Santiago Iglesias número 70 del pueblo de Coamo; que tiene una hija llamada Carmen Magdalia Santos de 8 ó 9 años de edad, habida en relaciones sexuales que sostuvo con la demandada Beatriz Berdecía, con quien nunca contrajo matrimonio, habiendo reconocido a esa niña como hija suya inmediatamente después de su nacimiento; que en la actualidad presta servicios en las fuerzas armadas de los Estados Unidos y está destacado en San Juan pero viene a su hogar en Coamo todas las semanas y allí pasa dos o tres días; que quiere mucho a su hija Carmen Magdalia por ser su primera y única hija y que su actual esposa está de acuerdo en que le concedan a él la custodia de dicha niña; que la casa donde él vive es de hormigón con baño enlocetado, inodoro y no se pisa tierra porque hay más de cien metros colindantes con el patio; que en esa casa tiene facilidades de refrigeración, nevera, y una habitación reservada para su hija y que además tiene sirvienta; que en su casa su hija no tendrá que trabajar porque piensa mandarla a un colegio católico ya que está interesado en su educación; que Beatriz Berdecía casó nuevamente pero que no sabe si ella

vive con su esposo o con don Justo Berdecía el abuelo materno de su hija ya que algunas veces va a la casa de dicho don Justo y no encuentra allí a su hija; que su hija vive en las dos casas, lo mismo está en casa de don Justo que en la casa de Beatriz; que la casa de don Justo radica en la calle Grand Stand y es una casa vieja, regalada hace más de cuatro años por la viuda Santiago, y no tiene baño ni inodoro; que la niña está enferma; que muchas veces ha tenido que ir en muletas a ver a su hija porque no la mandan donde él; que la última vez que fué a ver a su hija la abuelita le salió con malas crianzas; que no le permiten estar al lado de su hija ni ésta le pide la bendición porque ellos se lo prohiben y tratan de alejarle de él. En la repregunta declaró, cuando se le preguntó que de quién era la casa donde vive la niña, que hay dos casas; que la casa donde vive la niña con su mamá es de la madre de su esposo, o sea, de la suegra de Beatriz y la otra casa donde también vive la niña es del abuelo de ésta don Justo Berdecía; que ésta es la segunda petición de hábeas corpus que radica para obtener la custodia de su hija; que el primer caso no se ventiló porque el demandante estaba en las fuerzas armadas y fué ordenado a prestar servicios en la isla de Santa Cruz; que hay semanas que no viene a su hogar en Coamo; que la Administración de Veteranos le pasaba a la madre de la niña una pensión de $34 mensuales pero que desde el mes de octubre le suspendieron esa pensión; que al testigo lo demandaron antes en la corte porque no pasaba los alimentos a su hija y que ello se debió a que al licenciarse tardó en recibir los cheques pero que le decía a la niña que se fuera para su casa porque allá tenía todo lo que necesitara hasta que llegara el dinero; que al no recibir el último pago, automáticamente lo pusieron en la corte y fué sentenciado a pasarle $12 mensuales a la niña; que luego la madre de la niña supo que reportándolo a la Administración de Veteranos le pasarían más dinero y así lo hizo y fué entonces cuando comenzó a recibir la niña la suma de $34 mensuales; que al testigo el gobierno federal le pa-

saba una pensión como veterano estudiante de $96 y que a la hija y a la madre le pasaban entonces una pensión de $34 mensuales mientras que cuando era soldado esta pensión era de $96; que ahora el gobierno no le fija una pensión a los hijos naturales que no viven con su padre sino que éstos voluntariamente asignan la cantidad que desean pasarle y que él asignó a su hija la suma de $15 mensuales; que esos $15 no son suficientes para sufragar los gastos de su hija en el sitio donde ella está viviendo pero que sí serían suficientes si ella viviera en el hogar del testigo; que los gastos de la niña los paga el testigo; que la niña paga en el colegio católico donde estudia la suma de $3.50; que la niña tiene un crédito abierto en Valldejully y Segarra; que nunca ha llevado un médico para atender a su hija pero que en algunas ocasiones le ha comprado medicinas; que la casa donde vive la madre de la niña es muy vieja y está destechada; que sabe que el esposo de Beatriz trabaja en la cantera de Padilla pero no sabe cuánto gana por su trabajo; que alegó en su petición de hábeas corpus que su hija está bajo la custodia física del demandado Justo Berdecía porque ese señor es el abuelo de la niña y cuando él fué allá le dijo que la dejara en la casa porque él la quería mucho y el testigo aceptó dejarla dos o tres meses pero que ahora no puede visitar esa casa por la forma en que lo trata el señor Berdecía; que asimismo alegó en su petición que la niña está obligada a vivir con el recurrido en un medio reducido que ofende su salud porque la casa no está cercada y en ésta entra todo el mundo y es una casa que no presta condiciones; que la niña ha llegado a su casa los domingos y la ha encontrado llena de piojos y con las orejas sucias; que ha radicado la petición de hábeas corpus contra Beatriz Berdecía y Justo Berdecía porque la niña está en una de las dos casas y él quiere velar por su hija; que no sabe lo que la madre de la niña gana en un taller haciendo blusas y que como la madre de la niña y su esposo viven gratis en una casa pueden ser lanzados de ella en cual-

quier momento; que tiene una idea de como es la casa donde
vive la madre de la niña porque ha pasado muchas veces por
allí pero sabe que no reúne condiciones; que su esposa puede
prodigarle a la niña los mismos cuidados y cariño que la
verdadera madre; que no sabe lo que gana el esposo de la
demandada Beatriz Berdecía; que las veces que ha ido a la
casa de don Justo Berdecía lo ha encontrado borracho; que
tiene dinero economizado y está dispuesto a darle todo lo que
su hija necesita en el hogar del testigo.

*Filomena Ramírez de Santos* declaró que está casada con
el demandante Roberto Santos González y que en ese matri-
monio no han tenido hijos; que sabe que su esposo tuvo una
hijita antes de casarse con ella; que si la niña va a su casa,
como así ella lo desea, la trataría con todo el cariño posible y
se dedicaría a atenderla porque ella sería su compañera en
ausencia de su esposo; que su esposo va a Coamo cada ocho
días y algunas veces el miércoles; que la casa donde vive es
cómoda y tiene baño e inodoro; que le tiene afecto a la niña
y la trataría como a una hija de la casa; que la testigo tiene,
además del sueldo de su esposo, una finca y una casa que le
renta $75 mensuales y que ese dinero lo usaría para sostener
y atender a la niña; que hace seis años que está casada con
Roberto Santos; que la niña iba a visitarla y en algunas
ocasiones le dijo a su esposo que la niña debería vivir con
ellos.

La prueba de los demandados consistió en los testimonios
de Angelita González de Pizarro, miembro de la Asamblea
Municipal de Coamo, Ignacio Borges, Julia Berdecía, hermana
de la demandada, Beatriz Berdecía de Torres, Carmen Mag-
dalia Santos y Filomena Ramírez de Santos.

En términos generales el testimonio de estos testigos
puede resumirse así: La demandada Beatriz Berdecía vive
con su hija Carmen Magdalia en una casa sita en la calle
Grand Stand de Coamo en unión a sus suegros, quienes son
los dueños de dicha casa. Es una casa de maderas cons-

truída después del ciclón del año 1928 y tiene baño y cuatro habitaciones y está en condiciones de ser habitada. La demandada trabaja en el taller de Zoilo María Colón por ajuste y percibe un salario por ese trabajo que fluctúa entre $15 y $16 semanales; el esposo de la demandada trabaja en la cantera de Padilla y tanto uno como el otro son personas honradas que gozan de buena reputación en la comunidad. La hija de la demandada es cuidada por ésta con cariño y esmero y la tiene cursando estudios en un colegio privado. La demandada se vió obligada en una ocasión anterior a recurrir a la corte para obtener que el demandante pasara alimentos a su hija. Todos los gastos de la menor tales como pago del colegio, medicinas, médico, vestidos y alimentación los sufraga la demandada Beatriz Berdecía con el salario que ella percibe por su trabajo y con algún dinero que para ese fin le da su esposo. Cuando su hija tenía dos años de edad, la demandada, con las economías de su trabajo y la pensión que recibía del gobierno federal, por razón de estar el padre de la niña prestando servicios en el ejército, construyó una pequeña casa para vivir con su hija y poco a poco fué mejorándola pero que más tarde cuando el padre de la niña regresó del ejército, él vendió esa casa y no le dió a ella participación alguna en el producto de la venta. Todos los domingos la niña va a visitar a su padre acompañada de un sobrinito suyo y en muchas ocasiones encuentra la casa cerrada. Ni los Santos Reyes ni Santa Claus han traído algún regalo a la niña en el hogar de su padre pero sí se lo han traído en el hogar de la madre. Antes de contraer matrimonio la demandada vivía con su hija Carmen Magdalia en la casa de su padre Justo Berdecía. La esposa del demandante trata bien a la menor Carmen Magdalia y aunque a ésta le gusta la casa de su padre prefiere vivir con su señora madre porque siempre ha vivido con ella. La menor goza de buena salud.

Esta fué la prueba que tuvo ante sí la corte inferior para llegar a la conclusión de que se probaron los hechos de la

demanda y que el bienestar de la menor está mejor garantizado con su padre y la esposa de éste. [1]

La prueba fué contradictoria en muchos extremos, más aunque no intervendremos con la discreción ejercitada por la corte inferior al dirimir su conflicto, nos vemos obligados a examinarla para determinar si, como alegan los apelantes, dicha prueba no sostiene las conclusiones de hecho del tribunal inferior.

En la petición de hábeas corpus se alega que la menor Carmen Magdalia Santos, se encuentra bajo la custodia física de su abuelo materno Justo Berdecía. La corte inferior encontró probado ese hecho y lo consignó en sus conclusiones en la siguiente forma: "Cuando se casó la demandada entregó la niña a su padre, abuelo de la menor, con quien vive y duerme en su casa." En sus conclusiones de derecho, la corte inferior da gran énfasis a ese hecho cuando argumenta que el padre de la menor ha sido privado por una tercera persona del disfrute de su derecho a tener la custodia de su hija. En realidad, esta conclusión de hecho pesó fuertemente en el ánimo del juez de la corte a quo, al decidir el recurso. En su 3a. conclusión de derecho, se expresa así:

"3a. Reconocemos que, como hemos dicho en otros casos y lo ha manifestado nuestro Hon. Tribunal Supremo, (*Rodríguez* v. *Pagán,* 67 D.P.R. 345) nadie cuida de ordinario con mayor celo y cariño a un menor que su propia madre, pero cuando del estado de hechos resultante de la evidencia, se demostrare que la madre en vez de cuidar a su hijo con celo y cariño, lo entrega a una tercera persona que (como en este caso) no está en condiciones de proporcionarle el bienestar y la felicidad a que el niño tiene derecho, el solo hecho de ser madre de la menor cuya custodia se discute, no debe mover a la corte a concederle la compañía de su hijo cuando, como en este caso, la menor, al vivir con su padre estaría cuidada y atendida además de por él, por

---

[1] La 6a. Conclusión de Hecho de la corte inferior lee así:

"6a. Por el contrario nos dieron el demandante y su esposa la impresión de que decían la verdad, llevándonos a concluir que se probaron los hechos de la demanda y que el bienestar de la menor está mejor garantizado con su padre y la esposa de éste."

la esposa de su padre quien ha manifestado que tiene cariño por la menor y está dispuesta à utilizar sus rentas y sus bienes para darle un mejor estar y educarla debidamente."

Ahora bien, ¿hay base en la prueba para concluir, como lo hizo la corte inferior, que "cuando se casó la demandada entregó la niña a su padre, abuelo de la menor, con quien vive y duerme en su casa"? La única prueba presentada por el demandante sobre este extremo, lo fué su propio testimonio. Examinémoslo. En el interrogatorio directo se expresó así:

"P. ¿Con quién está viviendo la hijita suya ahora?

"R. Algunas veces no la mandan a casa y yo he tenido que ir cojo, he tenido que ir con esta pata enyesada en casa de don Justo Berdecía.

"P. ¿Quién es don Justo Berdecía?

"R. El abuelo y no me atrevo ir porque ella es casada y vive un poco más retirado y no me gusta porque podrían creer cualquier cosa, como ella era mi señora.

"P. ¿Beatriz se casó nuevamente?

"R. Sí, señor.

"P. ¿Beatriz vive con su esposo o con don Justo?

"R. Yo no sé porque algunas veces voy en casa de don Justo y no encuentro la nena.

"P. ¿Vive en las dos casas?

"R. Vive en las dos casas.

"P. ¿Lo mismo está en casa de don Justo que en casa de Beatriz?

"R. Sí, señor." (T. E., pág. 8)

En el contrainterrogatorio, declaró lo siguiente:

"P. ¿De quién es la casa dónde vive la nena?

"*Testigo:*

"Puede ser... hay dos casas y le voy a decir las dos casas cuáles son y de quién son. *La casa que vive la nena con la mamá,* es de la mamá del esposo, de la suegra de ella, *y la otra casa que también vive la nena* es de don Justo Berdecía, que fué regalada, porque un señor muy viejo que le decían Chaplín murió y ellos cogieron esa casa, la casa de la barriada al frente del Grand Stand y ahí es que viven." (T.E., pág., 13.) (Bastardillas nuestras.)

"P. ¿Entonces testigo, usted dice que viendo la casa, pero usted no se atreve asegurar que la casa de ésta señora es una casa desmantelada?

"R. Con el permiso, Hon. Abogado, Hon. Juez. Cuestión de la casa de ella, ella no tiene casa, sino la mamá del esposo, *ella vive en una casa de la mamá del esposo,* y tiene otra familia más que vive en esa casa, y si la casa que señala no es la propia casa, puede ser también lanzado de esa casa." (T. E., pág. 27.) (Bastardillas nuestras.)

"P. ¿Entonces testigo, usted no sabe a ciencia cierta si es cierto o no sabe a ciencia cierta, bajo el cuido de quién es que está la niña si es de él o si es de la señora?

"R. *Yo sé que está en las dos casas.*

"P. ¿Por qué usted alega aquí, si me lo puede explicar, en el hecho tercero de su petición, que la referida menor se halla actualmente bajo la custodia física del recurrido Justo Berdecía?

"R. Este señor que está al frente. Yo sé que es el abuelo de ella. Porque el señor cuando yo fuí allá me dijo que se la dejara en la casa que la quería mucho, el abuelo, y yo le dije le voy a aceptar por dos meses a ver, pero como he ido a la casa y no me la ha presentado como debe de presentarla a un padre, es más, aquél es un hombre de palabra en un hogar y ví la cosa que no podía visitar esa casa, que hasta las mismas hijas de él han tenido que mandarlo a callar..." (T. E., págs. 28 y 29, bastardillas nuestras.)

"P. ¿Qué recurre en contra del señor y de la señora?

"R. Claro, con el permiso, *porque la niña está en una de las dos casas* y yo quiero velar por la hija mía." (T. E. pág. 31, bastardillas nuestras.)

"P. ¿No sabe cómo es la casa donde ella vive?

"R. Tengo una idea, porque he pasado muchas veces, pero sé que no reúne condiciones. Hay que ir personalmente a verla, ya que se me puede creer o no; hay que ir personalmente a las tres casas, *a la del papá* de ella; *a la casa de la señora* y a la casa de este servidor." (T. E. pág. 32, bastardillas nuestras.)

Dándole entero crédito a este testimonio, no podemos convenir con el tribunal inferior ni suscribir su conclusión de hecho al efecto de que la demandada Beatriz Berdecía, entregó la custodia de su hija a Justo Berdecía, cuando ella contrajo matrimonio y que dicha menor vive y duerme en la casa de su citado abuelo materno. Tal conclusión no está sostenida por la prueba. El tribunal inferior pudo concluir, a lo sumo, que dicha menor vivía en las dos casas, en la de su

señora madre y en la de su abuelo. Del testimonio antes transcrito se infiere que el peticionario desconoce la verdad sobre ese hecho esencial.

La corte a quo también resolvió en sus conclusiones de hecho, (²) que la niña está mal atendida y cuidada como consecuencia de no ser cierto que su madre, la demandada, percibía un salario de $15 a $16 semanales y como consecuencia de la imposibilidad de su esposo de ayudarla suficientemente. Independientemente del cuál sea el salario o jornal que perciben la demandada y su esposo, es un hecho incontrovertido que ambos se dedican a labores remuneradas. Lo que verdaderamente debe preocuparnos es la conclusión de la corte inferior al efecto de que la menor está mal atendida y cuidada. Aceptando que la casa donde vive la demandada está en malas condiciones físicas, la prueba del demandante (su propio testimonio) establece, como únicos actos de abandono y descuido de la menor, el hecho de que la niña ha llegado a casa del demandante los domingos y la ha encontrado llena de piojos y con las orejas sucias. Del récord no se desprende cuántas veces ha ocurrido eso. No creemos que ese hecho por sí sólo, sea suficiente para sostener una conclusión de carácter tan general como la que hizo la corte inferior. No debe olvidarse que la menor cursa estudios en un colegio privado. Generalmente en estas instituciones se presta especial atención al aseo personal de sus estudiantes. El demandante declaró también que la niña estaba enferma, delgada y sin glóbulos. La prueba de la demandada por el contrario tendió a demostrar lo contrario y aunque existe ese conflicto y aunque la menor estuvo ante la presencia del juez de la corte inferior, y prestó declaración, nada hay en sus conclu-

---

(²) "5a. Tampoco nos mereció crédito el testimonio de Julia, la hermana de Beatriz, quien dijo que ésta gana $15 o $16 semanales y lo emplea todo en la niña; mas destruyó su propio testimonio diciendo que su hermana vive embrollada por atender a la menor. *Lo que nos lleva a inferir* que no es cierto lo del sueldo ni tampoco que el marido de la demandada puede ayudarla lo suficiente con su trabajo y *como consecuencia que la niña está mal atendida y cuidada.*" (Bastardillas nuestras).

siones de hecho, que revele el estado de salud de la menor. Concluir que dicha menor está mal cuidada y atendida no implica necesariamente que esté enferma.

Por otro lado, el récord revela que la demandada es una mujer honesta, de buen carácter y goza de buena reputación.(³)   Revela además que tanto ella como su esposo viven modestamente con el producto del trabajo de ambos, mientras que el demandante vive en una posición económica más desahogada, posee una buena casa de hormigón con baño y servicio sanitario, y disfruta de comodidades tales como la de tener una refrigeradora y una sirvienta.

■   Es incorrecto afirmar que "solo cuando la conducta del padre es tal que pueda resultar en influencia dañina para la moral de los hijos, o cuando éste, sin justificación alguna, los atropella o abandona en sus necesidades; o los tiene en ambiente que pueda conducirlos al mal o a poner en peligro su salud y bienestar, puede un tribunal, en el ejercicio de su poder de *parens patriae* privar al padre de su cuidado y custodia".   Tal vez esta afirmación de la corte inferior, está inspirada en la doctrina establecida en los casos de *Le Hardy* v. *Acosta*, 18 D.P.R. 450; *Arbona* v. *Torres*, 24 D.P.R. 450 y *Rojas* v. *Colón*, 27 D.P.R. 882.   En este último se expuso la doctrina así:

---

(³) Independientemente de la prueba presentada por los demandados sobre el carácter y reputación de la madre de la menor, del récord surge el siguiente incidente:

"P. ¿Testigo, cuando usted se llevó a vivir a la madre de la niña, con usted, qué clase de mujer era ésta?

"*Lcdo. Noriega:*

"¿Qué tiene que ver la clase de mujer que era esta señora?   El compañero quiere remontarse a antes de haber nacido la niña ésta.   Nosotros no decimos en la demanda que ella es mala.

"*Lcdo. Padilla:*

"Ojalá lo dijera.

". . . . . . . .

"*Juez:*

"Vamos a terminar con el caso.   Aquí no hay *issue* ninguno en cuanto a la honestidad, carácter y reputación de la demandada.   De manera que no hay que levantar una defensa ni una repregunta de esa naturaleza. Yo creo que es impertinente la pregunta."   (T. E., págs., 14 y 15.)

"La patria potestad impuesta por la naturaleza y reconocida y regulada por nuestras leyes crea derechos y deberes, siendo uno de aquéllos el de que el padre, o, en su caso, la madre, tengan a sus hijos en su compañía, derecho que está reconocido en la ley al disponer ésta en el número 1º del artículo 223 del código citado, como uno de los efectos de la patria potestad, que tienen ese deber, el cual no podrían cumplir si no tuvieran el derecho de reclamarlo. Siendo, pues, un derecho no puede privarse de él al padre, o en su caso a la madre sino en los casos previstos y determinados por la ley."

y a la página 885 se agregó: "El padre debe tener el dominio absoluto y custodia de sus menores hijos, a menos que se alegue y pruebe alguna poderosa razón legal en contrario."

Sin embargo tal doctrina ha sido repudiada por este mismo tribunal. En *Llopart* v. *Mesorana*, 49 D.P.R. 250, se cita con aprobación, de la opinión disidente emitida por el Juez Presidente, Sr. Hernández, en el caso de *Arbona* v. *Torres*, 24 D.P.R. 451, 456, lo siguiente:

" 'No es posible', continúa diciendo el Juez Hernández en su opinión, 'sentar como principio absoluto e inflexible que el hijo natural haya de vivir con el padre que lo ha reconocido y ejerce sobre él el derecho de patria potestad. Las condiciones del ejercicio de ese derecho deben regularse por las cortes, según las circunstancias especiales de cada caso, sin olvidar nunca que la patria potestad según nuestro derecho actual no es un beneficio para el padre o para la madre, sino para el niño que de ella necesita.' "

Al mismo efecto véanse los casos de *Blanco* v. *Hernández*, 32 D.P.R. 22, *Babá* v. *Rodríguez*, 36 D.P.R. 502; *Ex parte Maldonado*, 42 D.P.R. 867 y *Chardón* v. *Corte*, 45 D.P.R. 621, citados en el de *Llopart* v. *Mesorana*, supra.

Ahora bien, hemos resuelto en repetidas ocasiones que en recursos de esta naturaleza el bienestar del niño es el elemento predominante. *Rodríguez* v. *Pagán*, 67 D.P.R. 345 y casos en él citados. En vista de ello cabe preguntar, ¿exige el bienestar de la menor Carmen Magdalia Santos que su custodia sea concedida al demandante según lo decretó la

corte inferior? . A nuestro juicio debe contestarse en la negativa. No hemos intervenido con la discreción ejercitada por la corte inferior al dirimir el conflicto de la prueba. Sin embargo no hemos aceptado como ciertos todos los hechos que consideró probados, por la razón evidente de que algunos de ellos no están sostenidos por dicha prueba.

■ Es cierto que la menor y su madre viven en la pobreza; aunque no en la indigencia pues tanto la demandada Beatriz Berdecía como su esposo, trabajan honestamente, y todos viven del producto de ese trabajo. Si la menor envuelta en este recurso sufriera de privaciones económicas, culpa sería de su padre, el demandante. ¿Por qué no provee voluntariamente alimentos a su hija en cantidad suficiente para cubrir sus necesidades estando en condiciones de hacerlo? Él vive en una buena casa de concreto, que tiene todas las comodidades, tales como baño, servicio sanitario, refrigeradora y además emplea una sirvienta. Percibe su sueldo como soldado del Ejército de los Estados Unidos, y su esposa recibe rentas de bienes privativos, por lo menos $75 mensuales del canon de arrendamiento de una casa,(4) y además tiene dinero economizado, depositado en las oficinas del correo. A pesar de eso pasa a su hija una pensión de $15 mensuales, para cubrir todas sus necesidades, sabiendo, como él mismo declaró, que tal pensión alimenticia es insuficiente. Hemos dicho que en una lucha entre padres por la custodia de un niño, prueba de que la situación económica del esposo era mejor, vale poco. *Blanco* v. *Hernández*, 32 D.P.R. 22.

Nos confrontamos también con otra circunstancia que debe tomarse en cuenta al considerar el bienestar de la niña. Al concederse su custodia a su padre, de hecho la niña pasará la mayor parte del tiempo viviendo bajo la custodia inmediata de la esposa de su padre, ya que éste solamente pasa dos o tres días de la semana en su hogar; y esto, no siempre. La corte inferior reconoce, citando a *Rodríguez* v. *Pagán*, supra,

---

(4) Estas rentas, de acuerdo con el artículo 1301 del Código Civil (ed. 1930), son bienes gananciales.

que de ordinario nadie cuida con mayor celo y cariño a un menor que su propia madre; pero sostiene que no puede aplicar esa regla al presente caso porque la evidencia demuestra que la madre entregó su hija a una tercera persona. Hemos dicho ya, y repetimos ahora, que tal conclusión de hecho no está sostenida por la prueba. Siendo ello así no hay razón justificada para ignorar en este caso una regla de tan profundo significado.

En resumen, ni el alegado estado de pobreza de la demandada, ni los alegados actos de descuido y abandono de la menor, que aparecen del récord, son factores de tal peso y naturaleza en este caso, que justifiquen por sí solos, que se arranque a la menor Carmen Magdalia Santos, de la custodia de su madre, con quien ha vivido siempre, y se lleve al hogar del padre, donde habrá de estar bajo la custodia inmediata de una madrastra.

Aplicando la regla de que "una cosa es la apreciación de la prueba y otra es el efecto legal de la misma", *Rodríguez v. Pagán*, supra; *Mercedes Bus Line* v. *Tribl. de Distrito*, 70 D.P.R. 690 y *Muñoz* v. *R. Fabián & Co.*, 71 D.P.R. 485, estimamos que considerando las circunstancias especiales de este caso, el bienestar de la menor requiere que permanezca bajo la custodia de su señora madre. Ello hace innecesario la consideración del primer error señalado.

*Debe revocarse la sentencia apelada y dictarse otra, desestimando la petición de hábeas corpus, con las costas.*

El Juez Presidente Señor Todd, Jr., no intervino.