RAMÓN MUÑOZ, peticionario y apelado, *v.* ALEJA TORRES y LEONOR ROCHE, recurridas y apelante la primera.

Número 11059.

*Sometido:* 23 de noviembre de 1953. *Resuelto:* 8 de diciembre de 1953.

508

*Ramón G. Goyco,* abogado de la apelante; *José N. Dapena Laguna,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

En la sección de Ponce del anterior Tribunal de Distrito de Puerto Rico, Ramón Muñoz radicó una petición de hábeas corpus contra Aleja Torres, reclamando la custodia de una niña, hija del peticionario, Lourdes Muñoz Roche, la cual, al tiempo de celebrarse la vista del caso en el tribunal a quo, el 29 de mayo de 1951, tenía cinco años de edad. Aleja Torres es la abuela de la niña. En la vista del caso, se unió a la madre de la menor, Leonor Roche, como parte codeman-

dada. El tribunal de Ponce dictó sentencia declarando con lugar la petición de hábeas corpus y ordenando la entrega de la niña a su padre, el peticionario. La sentencia se basó en las siguientes conclusiones sobre los hechos:

"1ª Ramón Muñoz, allá para 1945 tuvo relaciones amorosas con Leonor Roche y de ellas nació una hija, Lourdes, en 1946. A su nacimiento el demandante, quien estaba de soldado en la Isla de Trinidad, vino especialmente a Puerto Rico para reconocerla como su hija y así lo hizo.

"2ª Lourdes ha vivido, desde que nació, en casa de su abuela, la codemandada Aleja Torres, viuda de 55 años de edad. En junio de 1949 Leonor Roche dejó a su hija con doña Aleja y se embarcó para los Estados Unidos y permaneció allí hasta setiembre de aquel año, cuando regresó a casa de su madre, en Las Parcelas de Juana Díaz, donde ha permanecido desde entonces.

"3ª Algún tiempo después de su regreso de Estados Unidos, y en la propia casa de la codemandada doña Aleja, sostuvo Leonor relaciones de concubina con el policía Santiago Ortiz Berríos, y como resultado de esa convivencia nació un hijo. La propia Leonor así lo corroboró.

"4ª La casa de doña Aleja es una pequeña, de cuatro piezas, y en ella viven, además de doña Aleja, Leonor y sus hijos, Raquel Bonaparte, nuera de doña Aleja con dos nenas, y también dos hijos y una hija señorita de dicha codemandada; en total nueve personas. Los gastos de Leonor y su niña los hace doña Aleja, cuyos dos hijos trabajan y ganan $24 semanales. La ropa y zapatos de Lourdes los compra Leonor, quien recibe $10 del aquí demandante para su hija. Doña Aleja cocina, lava y aplancha la ropa y dirige su casa.

"5ª No hubo prueba de que Leonor tenga ocupación u oficio o que ingrese dinero por trabajo alguno; su madre le da para sus gastos. Expuso además en su contestación, en alegadas defensas especiales, que ella y su hija viven con doña Aleja porque no pueden vivir 'con lo poco que le pasa el peticionario', y es doña Aleja quien solventa las necesidades de ambas.

"6ª El demandante es veterano del ejército, recibe pensión por incapacidad física y para estudios. Es dueño de la casa y del terreno que vive. Está casado desde hace cinco años con Lillian Muñoz y ha tenido en el matrimonio dos niñas. La esposa declaró que desde dos años antes de la vista ella y el

esposo han hablado de traer a Lourdes a vivir con ellos y que está dispuesta a tenerla ella consigo como si fuera su propia hija, y se complacería con ello.

"La casa donde vive con su esposa y dos hijas el demandante tiene dos dormitorios, sala, comedor, cocina y letrina en el patio."

En sus conclusiones de derecho el juez sentenciador dijo, en parte, lo siguiente:

"2ª Hemos dicho antes, y lo ha repetido nuestro Tribunal Supremo, que de ordinario nadie cuida con mayor celo y cariño a un menor que su propia madre (*Rodríguez* v. *Pagán*, 67 D.P.R. 345) pero en este caso, no ha habido prueba de que la codemandada dé a su hija ese celo y cuidados maternales. Es doña Aleja, la abuela, quien provee los gastos de la menor en disputa y los de su madre la codemandada Leonor Roche. Esta la deja con la abuela y se va a Estados Unidos donde estuvo unos cuatro meses y por no acostumbrarse allá, regresa a su casa, y después de algún tiempo, y en la propia casa de su madre, en donde tiene a su propia hija, ya mayor de tres o cuatro años, se dedica a vivir en concubinato con el policía Santiago Ortiz Berríos y tiene de él un hijo.

"No se ocupa mucho al parecer del bienestar moral de su hija—por lo que dejamos dicho—sino que tampoco de su bienestar material, pues no hubo en la evidencia prueba de que trabajara Leonor ni aun en cocinar, lavar y aplanchar en la propia casa de su madre, que le atiende a las necesidades de ella y de su hija.

"La abuela de la menor, doña Aleja, da por buena la conducta moral de su hija, permitiendo su concubinato en la propia casa, y condonando, sin duda alguna por su bondadoso amor de abuela, la desatención de la madre hacia su hijita Lourdes.

"3ª En estas circunstancias, creemos, como cuestión de derecho, que tanto la conducta de la madre como de la hija, aquí codemandadas, no las capacitan moralmente para continuar con la custodia de la menor Lourdes Muñoz. Dejar a esta niña con la madre y con la abuela, en las condiciones que revela la prueba que hemos expuesto en las conclusiones de hecho precedentes, no garantiza, a satisfacción del tribunal, que la hija del aquí demandante ha de crecer y desarrollarse en un ambiente de sana moral y buenas costumbres; ni tiende a asegurar su bienestar

físico y espiritual; ni su educación libre de ejemplos posible-
mente corruptores de su carácter.

"4ª Si bien el hecho de que el padre está en mejores condi-
ciones económicas que la madre, o cualquier tercera persona
que tenga la custodia de un menor, no es por sí sólo decisivo
de la contienda en favor del padre (*Blanco* v. *Hernández*,
32 D.P.R. 22), sin embargo, ello, en vista de la situación moral
antes reseñada, unido al hecho de que el padre tiene ingreso
como veterano y pensión por incapacidad; de que es dueño
de la finca (casa y terreno) donde vive; de que tiene un hogar
constituído debidamente; de que la esposa desea tener a esta
menor como suya propia; hace que la ley y la equidad, que
velan primordialmente por el bienestar y felicidad de los meno-
res, se declarasen, por la preponderancia de la prueba, en favor
del aquí demandante."

La demandada Aleja Torres ha apelado ante este Tri-
bunal y ha señalado, como único error, el siguiente: "Come-
tió el tribunal a quo manifiesto error de derecho en la
apreciación de la prueba al concluir que el bienestar de la
menor está en vivir con la madrastra y con su padre, que
apenas la conocen, y no con su propia madre y con su propia
abuela, con las cuales ha convivido desde que nació, siendo
axiomático que nadie cuida de ordinario con mayor celo y
cariño a un menor que su propia madre. *Rodríguez* v.
*Pagán*, 67 D.P.R. 345-349."

Antes que nada, se hace preciso el señalar que de
la transcripción de evidencia surgen, a través de prueba
incontrovertida, ciertos hechos que no fueron cubiertos ni
expuestos adecuadamente en las conclusiones formuladas por
el tribunal a quo. Es cierto que algún tiempo después de
haber regresado la madre de la niña de los Estados Unidos
en septiembre de 1949, y después de haber nacido dicha niña,
la madre, Leonor Roche, vivía en público concubinato con
un policía, que estaba casado con otra persona, en la propia
casa donde vivía la niña. Ese hecho fué la base esencial del
dictamen del tribunal a quo, siendo su criterio que, de vivir
la menor con su madre y abuela, ella estaría recibiendo

ejemplos corruptores y contrarios a las buenas costumbres, y estaría viviendo en un ambiente de inmoralidad. Pero de la totalidad de la prueba presentada surge, en forma incontrovertida, que Leonor y el policía tuvieron relaciones amorosas y sexuales, y vivieron en concubinato, solamente durante un período de tiempo de seis meses. Aunque nació un niño de esas relaciones, que también vive con las demandadas, sin embargo, al tiempo de radicarse la petición y durante todas las etapas de este procedimiento, Leonor ya no vivía en concubinato con el policía. Erró además el tribunal sentenciador al concluir que "no ha habido prueba de que la codemandada dé a su hija ese celo y cuidados maternales". Hubo prueba de la parte demandada al efecto de que Leonor Roche trataba continuamente a su hija con cariño y afecto. Esa realidad no quedó destruída, según creyó el tribunal a quo, por el hecho de que era la abuela, y no Leonor, la que proveía la mayor parte de los gastos de la menor; de que Leonor se fué a Estados Unidos y regresó a los cuatro meses; de que ella no trabajaba fuera de su casa y se dedicaba solamente a labores domésticas, dentro de su casa, ni quedó destruída por el hecho de que la madre hubiera vivido en concubinato con un policía por espacio de seis meses.

En cuanto a los ingresos económicos de la menor y de su abuela, la prueba demostró que el propio peticionario, padre de la niña, le pasaba $10 mensuales y que, siendo el peticionario un ex soldado o veterano incapacitado, la menor, como hija de él, había empezado a recibir del Gobierno de los Estados Unidos la suma de $19 mensuales, desde el mes anterior a la celebración de la vista. La abuela de la menor recibía, además, $83 mensuales de otros hijos, hermanos de Leonor.

Bien conocido es el poder de "parens patriae" del Estado con respecto a los niños, a los fines de promover su bienestar, como seres humanos y como ciudadanos potenciales, y develar por el establecimiento del ambiente más adecuado posi-

ble para el desarrollo de su personalidad. El concepto del bienestar de los menores responde a, y es función de, una multiplicidad de factores, de carácter moral, psíquico, cultural y económico. Ningún factor o elemento aislado es exclusivo o decisivo, debiendo considerarse la totalidad de las circunstancias envueltas en cada caso. Cuando se trata de una niña de tierna o de poca edad, como la que es objeto del litigio en este caso, el ambiente de cariño, afecto y comprensión que la pueda rodear es de importancia esencial para su bienestar y desarrollo armónico y adecuado. La madre está en una posición superior y preeminente para suministrar ese cariño y ese cuidado afectuoso. Es por ello que debe continuar prevaleciendo la regla al efecto de que, en casos de niños, los tribunales deben, generalmente, preferir el conceder la custodia de un niño a la madre, ya que, de ordinario, nadie cuida con mayor celo y cariño a un menor que su propia madre, a menos que concurran circunstancias excepcionales que justifiquen el privar a la madre de la custodia. *Santos* v. *Berdecía*, 73 D.P.R. 766; *Rodríguez* v. *Pagán*, 67 D.P.R. 345; *Fernández* v. *Martínez*, 59 D.P.R. 548.

En el caso de autos no concurren aquellas circunstancias verdaderamente excepcionales que justifiquen el arrancar a la niña en cuestión de la custodia de su madre. El hecho de que ella haya vivido, *previamente*, en concubinato con otro hombre, en la misma casa con la niña, no conlleva la existencia, o la probabilidad de que exista en el futuro, un ambiente de inmoralidad y corrupción tal, que quede lesionada la personalidad moral de la niña, hasta el punto de que se prive a la madre de la custodia. En *Fernández* v. *Martínez*, supra, el padre de un niño de poca edad presentó una petición de hábeas corpus contra la madre, alegando, esencialmente, que ella había estado viviendo en concubinato con otro hombre, en la misma casa en donde vivía el niño. Se resolvió que, en vista especialmente de que desde varios meses antes del juicio ella ya no vivía en concubinato

con· el otro hombre, el menor debía quedar bajo la custodia de la madre, debiendo declararse sin lugar la petición de hábeas corpus.

■ En cuanto al factor económico, aun asumiendo que en el caso de autos el padre esté en una situación económica relativamente superior a la de la madre, no se ha demostrado que el contraste en la situación económica de ambos sea tan notable o tan extremo, o que la madre viva en una situación tal de indigencia o miseria, que se deba transferir la custodia de la madre al padre. *Santos* v. *Berdecía*, supra. El factor del cariño maternal tiene mucha más importancia en este caso que la situación económica, especialmente en vista de que la niña y la madre están en una situación económica relativamente adecuada. *Santos* v. *Berdecía*, supra.

*Debe revocarse la sentencia apelada y dictarse otra, desestimando la petición de hábeas corpus, con las costas.*