Isabel Díaz y Ada Bisinia Pastrana, menor representada por su madre, Isabel Díaz, peticionarias, *v.* Corte de Distrito de Humacao, Hon. R. Arjona Siaca, Juez, demandada.

Núm. 1191.—*Sometido:* Julio 24, 1939. *Resuelto:* Julio 29, 1939.

*Burset & Pérez Pimentel,* abogados de las peticionarias; *Antonio L. López,* abogado del interventor, demandado en el pleito principal.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Isabel Díaz y Ada Bisinia Pastrana, menor esta última representada por la primera su madre Isabel Díaz, comparecieron por medio de abogado y radicaron una petición de *certiorari* en solicitud de que esta corte reclamara los autos del pleito núm. 20,665 seguido en la Corte de Distrito de Humacao por la menor representada por su madre contra el padre de la misma Pedro Pastrana, sobre alimentos provisionales, y revisara y anulara los procedimientos de dicha corte a partir de la moción de reconsideración de la senten-

cia dictada en el mismo y especialmente las resoluciones de mayo 25 y junio 19 de 1939 ordenando que la menor fuera internada en el Colegio de la Inmaculada Concepción de Manatí.

El mandamiento fué expedido y las partes interesadas oídas por sus abogados el 24 de julio en curso.

 Muestran los autos originales del pleito que en agosto 16, 1937, la menor, representada en la forma que se ha dicho, demandó en la corte de distrito a su padre en reclamación de una pensión alimenticia de treinta dólares mensuales, alegando que tiene cuatro años de edad y vive con y está bajo el cuidado y patria potestad de su madre Isabel Díaz, divorciada; que es insolvente, contando exclusivamente para su sostenimiento con la ayuda de su padre el demandado que sólo le da cuatro dólares semanales, suma que le resulta insuficiente; que el demandado trabaja en Juncos en una casa de comercio y recibe ochenta dólares mensuales de sueldo más un tanto por ciento en las ganancias que le produce una entrada anual como de quinientos dólares, lo que le permite pasar la pensión de treinta dólares mensuales que necesita para su alimento, medicinas y vestido.

Señaló la corte la primera comparecencia para agosto 20, 1937, contestando un día antes el demandado. Alegó que dados su sueldo—sesenta dólares mensuales—y el hecho de habitar la demandante la única propiedad que el demandado tiene—una casa que vale unos mil dólares—los diez y siete dólares mensuales que da a su hija para su sostenimiento es todo cuanto puede.

El 29 de octubre de 1937 se celebró la segunda comparecencia practicándose la prueba ofrecida en la primera y el 5 de noviembre siguiente dictó el juez su sentencia señalando la pensión en veinte y cinco dólares mensuales.

Apeló el demandado para ante esta Corte Suprema a cuya Secretaría se elevó la transcripción de los autos en marzo 4, 1938. El recurso quedó resuelto por sentencia de diciem-.

bre 16, 1938, confirmando la apelada (*Pastrana* v. *Pastrana*, 54 D.P.R. 956).

Así las cosas, en abril 27 de este año el demandado presentó a la corte una "moción de reconsideración" como sigue:

"(1) Que esta Corte ha dictado sentencia condenando al demandado a pasarle alimentos a la demandante.

"(2) Que el día 26 de noviembre de 1938 la señora Isabel Díaz, madre de la demandante y quien fué esposa del demandado contrajo nuevo matrimonio con el Sr. Carmelo García Rodríguez, y se llevó consigo a la niña Ada Bisinia Pastrana, la demandante en este caso.

"(3) Que el señor Carmelo García Rodríguez tiene otros hijos de otro matrimonio y todos viven bajo el mismo techo que la señora Isabel Díaz de García y con la demandante, o sea la niña Ada Bisinia Pastrana.

"(4) Que tanto el señor García como sus hijos y su esposa Isabel Díaz y la niña Ada Bisinia Pastrana viven en la mayor penuria debido a que el referido Sr. García Rodríguez no está trabajando actualmente y no percibe rentas ni sueldos de clase alguna.

"(5) Que la niña Ada Bisinia Pastrana no está siendo atendida ni cuidada debidamente en el hogar del señor Carmelo García Rodríguez y la situación que prevalece en dicho hogar es altamente perjudicial para la salud y bienestar de dicha niña.

"(6) Que el demandado en este caso ofrece ahora formalmente el conducir y llevar a dicha niña ál propio hogar del demandado y allí alimentarla y atenderla debidamente, haciendo constar el demandado que está conforme con cualquier disposición que haga esta Corte de la custodia de la referida niña con excepción de su permanencia en el hogar del señor Carmelo García Rodríguez.

"Por todo lo que, el demandado respetuosamente solicita de esta Corte que reconsidere su anterior sentencia condenándolo al pago de los alimentos y le exonere definitivamente de continuar pasando dichos alimentos permitiendo que el demandado tenga bajo su custodia a la demandante y la alimente y la eduque de acuerdo con lo que disponga esta Corte."

Se opuso la demandante, alegando en su defensa:

"(a) Que la moción de reconsideración no alega hechos suficientes y meritorios para que esta Hon. Corte reconsidere la sentencia dictada en el caso de epígrafe.

"(*b*) Que la cuestión relativa al uso del derecho de elección que concede al alimentante el artículo 148 del Código Civil (Ed. 1930), fué resuelta contra el demandante en la sentencia dictada por esta Hon. Corte y confirmada por nuestra Corte Suprema, conforme a lo resuelto en el caso de *Capifali* v. *Lloveras,* 33 D.P.R. 804, siendo por tanto dicha resolución definitiva.

"(*c*) Que esta Corte carece de jurisdicción y autoridad para privar a doña Isabel Díaz de la patria potestad sobre su hija Ada Bisinia Pastrana, dentro del presente pleito sobre alimentos."

En mayo 22, 1939, se celebró la vista de la moción con asistencia, de las partes y práctica de prueba por ambas y tres días después el juez resolvió el caso en la siguiente forma:

"Celebrada la vista y en armonía con la prueba practicada, la solicitud del demandado puede y debe entenderse enmendada en el sentido de pedir que la pensión se satisfaga proveyendo para la alimentación, cuidado y atención médica, albergue y educación de la niña, matriculándola como interna en el Colegio de la Inmaculada Concepción, ubicado en Santurce. Sobre lo adecuado de este Colegio para los fines antes indicados no hay discusión, constándole el hecho, además, al Tribunal. La demandante, sin embargo, manifestó preferir que su referida hija fuese a dicho Colegio en calidad de externa, en las mismas condiciones en que van otras estudiantes; pero continuando viviendo en su compañía, como antes se ha indicado.

"Apreciada en detalle y en conjunto la prueba presentada por ambas partes, la Corte llega a las siguientes conclusiones de hecho:

"1.—Por causas tal vez ajenas a su voluntad, las hijas del nuevo esposo de la demandante no han recibido la educación que es de esperarse de una persona que está y ha estado en las condiciones económicas que alega la demandante a favor de su nuevo esposo, pues la mayor de ellas, que tiene ahora 15 años de edad, y que se ha visto obligada a no asistir a la escuela por prescripción facultativa durante el último año, pero que, según dijo su padre, declarando como testigo, es inteligente y estudiosa, está todavía en sexto grado, sin que hubiera fracasado en ninguno de los años cursados. Esto indica que la niña fué puesta a la escuela a los 9 años de edad y que vendrá a terminar su educación primaria, probablemente, a la edad de 18 a 19 años, con un considerable retraso en su educación, si se compara con lo normal. Además, otra de las hijas del nuevo esposo de la demandante, que tiene en la actualidad 8 años de edad y que es la

que sigue a la mayor, comenzará a cursar su primer grado de instrucción primaria en el curso escolar de 1930-40; es decir, a los 9 años de edad, si se realiza el propósito de su padre de comenzar a enviarla a la escuela el próximo año, también con un considerable retraso en su proceso educativo. Además de ésta, la hija del nuevo esposo de la demandante, que sigue a la segunda, y que tiene en la actualidad 6 años de edad, todavía no asiste a escuela alguna, ni se ha indicado cuándo se piensa que comience a asistir.

"2.—Los inestables y reducidos ingresos del nuevo esposo de la demandante, no pueden permitir a éste y a la demandante, a pesar de la mejor disposición y voluntad que ellos tengan, para dar a la hija del demandado el bienestar hogareño que ella disfrutaba antes, cuando estaba sola con su señora madre, al dictarse sentencia original en este caso, época en que los cuidados de la madre se concentraban en ella sola, al contrario de lo que ocurre ahora en que tienen que dedicarse a la atención de cuatro niños de su nuevo esposo y a la de éste, por lo que necesariamente no puede prestar a su hija la misma atención y solicitud que antes; siendo, además, evidente que pueden ocurrir, como en la generalidad de los casos, serias desavenencias conyugales por las fricciones que indiscutiblemente ocurren con frecuencia entre las hijas de los distintos matrimonios, cuando dos personas divorciadas y con hijos se casan y constituyen un hogar común. Esas diferencias han apuntado ya en este caso y la continuación de las mismas no ha de ser beneficiosa para la hija del demandado en esta acción. Aparte de esto es indiscutible que el nuevo esposo de la demandante, como jefe de familia, ha de imprimir en el hogar su personal criterio sobre la conducta, educación y solución de los conflictos entre los distintos hijos, en todo lo cual necesariamente tiene que estar interesado el padre demandado en este caso, que está subviniendo con $25.00 mensuales a los gastos de su hija, cuya suma no se ha justificado que se invierta exclusivamente en ella.

"Estas y otras consideraciones de igual naturaleza, que se desprenden de la prueba practicada y estudiada por la Corte, la llevan a la conclusión de que el bienestar de Ada-Bisinia Pastrana Díaz aconseja que sea internada en un Colegio adecuado para su mejor atención y educación, teniendo acceso a la misma, para llevar sus relaciones familiares con ella, sus legítimos padres, la demandante y el demandado en este caso. En su virtud, y por haber variado las circunstancias que existían a la fecha en que se dictó sentencia en este caso, la cual, por la naturaleza del mismo, nunca es definitiva y está sujeta a variación en armonía con las nuevas circuns-

tancias del dispensador de los alimentos y del recipendiario de los mismos, la Corte entiende que debe modificar dicha sentencia en el sentido de disponer que la niña, desde ahora en adelante, recibirá sus alimentos, en toda la extensión legal de los mismos, mediante su internado en el Colegio de la Inmaculada Concepción, en Santurce, o en cualquier otro que, en su defecto, este Tribunal apruebe, debiendo ser pagados todos los gastos de dicho internado por el demandado en este caso, aunque los mismos importen una suma mayor que la originalmente fijada en la sentencia que ahora se modifica, a lo cual manifestó estar dispuesto en el acto de la vista, bajo condición de que la niña no habrá de ser trasladada a otro Colegio, ni egresada del mismo, bajo concepto alguno, a petición de los padres o de cualquiera otra persona, sin orden de esta Corte, pudiendo los padres visitarla en dicho Colegio, en armonía con la reglamentación interna del mismo, hasta que otra cosa se resuelva por el Tribunal.''

El 6 de junio de 1939 el demandado comunicó a la corte que no le sería posible conseguir el ingreso de la menor en el colegio ordenado y le pidió que decretara el ingreso de la niña en el de la Inmaculada de Manatí. Al serle notificada la moción al abogado de la demandante, hizo constar por escrito al pie de la misma su oposición.

Sin celebración de vista el juez resolvió en junio 19, 1939, la petición así:

Narra en los primeros dos por cuantos los antecedentes del caso y continúa:

''Por cuanto: el Juez que suscribe, hizo un viaje al referido Colegio de la Inmaculada Concepción establecido en la ciudad de Manatí, y, después de una personal observación del mismo y de haber obtenido toda la información suficiente con referencia al cuidado material y espiritual y a la educación académica y moral de las niñas que en el mismo se educan y viven, está plenamente convencido de que dicho Colegio constituye un sitio apropiado para el cuidado, la instrucción y la educación de Ada-Bisinia Pastrana;

''Por tanto: se autoriza el ingreso de dicha niña en la referida institución educativa de Manatí, hasta que otra cosa se resuelva por este Tribunal, quedando en pie todas las demás disposiciones contenidas en la resolución que esta Corte dictara el día 25 de mayo del año en curso y de la cual es ésta complemento.''

Las peticionarias en su solicitud de *certiorari* sostienen:

"Que la .Corte de Distrito de Humacao carecía de facultades y jurisdicción para dictar las resoluciones mencionadas en los párrafos octavo y noveno precedentes, por las siguientes razones:

"(*a*) Porque dichas resoluciones equivalen a una sentencia mediante la cual se priva a la peticionaria Isabel Díaz de la patria potestad sobre su menor hija Ada Bisinia Pastrana, en violación a lo dispuesto en el Artículo 164 de nuestro Código Civil.

"(*b*) Porque las referidas resoluciones resuelven cuestiones extrañas a la acción principal de alimentos.

"(*c*) Porque las referidas resoluciones privan ilegalmente de su libertad a la menor Ada Bisinia Pastrana, por cuanto una vez ingresada ésta en el Colegio de la Inmaculada Concepción de Manatí, no podría ser egresada del mismo, bajo concepto alguno, a no mediar una orden de la Corte de Distrito de Humacao."

Y argumentan en su alegato:

"Las resoluciones de que nos quejamos privan para siempre a doña Isabel Díaz de la custodia de su hija menor Ada Bisinia Pastrana, lo que equivale a decir que prácticamente se le está privando de la patria potestad sobre dicha menor.

"Si con motivo de haber pasado a segundas nupcias doña Isabel Díaz han surgido circunstancias que requieran para, beneficio de la menor que dicha señora sea privada de la patria potestad sobre ella, la ley previendo tales casos, ha dictado las reglas a seguir. Al efecto existe el artículo 164 del Código Civil que lee así:

"'Disuelto por cualquier causa el vínculo matrimonial, el padre o la madre que pasare o hubiere pasado a segundas nupcias, perderá la patria potestad sobre sus hijos mientras duren esas nupcias, siempre que así lo ordene, en juicio declarativo, la Corte de Distrito del distrito en que residan el padre o madre, previa demanda hecha por alguna de las personas llamadas a ejercer la tutela legítima, y siempre que el Tribunal, después de oír la prueba que corresponda, lo estime conveniente para beneficio del menor; *Disponiéndose*, que el padre o madre, si lo hubiere, privado ya de la patria potestad, podrá también pedir que se nombre el tutor correspondiente'."

Por el contrario el demandado en apoyo del poder de la corte para actuar en la forma en que lo hizo invoca varias decisiones de esta Corte Suprema. Nos referiremos a dos, a saber: *Puigdollers* v. *Monroig*, 14 D.P.R. 782, donde se resol-

vió, copiando del resumen, que "La corte de distrito que asigna una pensión alimenticia tiene jurisdicción para revocarla o modificarla, cuando de acuerdo con el artículo 177 del Código Civil las circunstancias lo justifiquen, y esto puede pedirse por medio de una moción en el pleito principal, sin que sea necesario entablar una demanda para ese objeto." Y *Chardón v. Corte,* 45 D.P.R. 621, donde se resolvió, copiando también del resumen, que:

"Una corte, después de dictar un decreto de divorcio, retiene jurisdicción posterior para dictar las órdenes necesarias y apropiadas en relación con la custodia de los hijos o para modificar de cuando en cuando, en armonía con los cambios de circunstancias, las órdenes previamente dictadas."

"Las cortes de distrito pueden, en moción presentada después de dictada sentencia de divorcio, dictar cualquier orden relativa a la custodia de los hijos que pueda ser librada en una acción independiente incoada con tal fin."

"La patria potestad está subordinada siempre al ejercicio por las cortes del poder de *parens patriae,* siendo el factor dominante en el ejercicio de tal poder el bienestar del hijo o hijos."

Habidos en consideración esos pronunciamientos, robustecidos por la propia disposición del precepto legal citado por las peticionarias—art. 164 del Código Civil—no creemos que pueda sostenerse que la Corte de Distrito carecía de jurisdicción sobre la materia.

Siendo ello así y no obstante haberse adoptado la medida en el pleito sobre alimentos y no en el de divorcio, como el uno fué la consecuencia del otro, nos está vedado penetrar en los hechos dentro de este procedimiento de *certiorari.* Se ha interpuesto apelación y si se perfecciona debidamente será dentro de ese recurso ordinario que podremos juzgar ampliamente si las alegaciones y las pruebas justifican la sentencia.

Ahora bien, nos parece tan claro el error de procedimiento cometido por la corte al dictar su última resolución—la de junio 19, 1939—que ésa sí que creemos que puede y debe anularse dentro de este recurso de *certiorari.*

Se trata de una enmienda trascendental. No es lo mismo sacar a una niña de unos cinco o seis años de edad del hogar materno para trasladarla a un colegio situado en la misma población, que para internarla en otro que está en un pueblo distante, especialmente cuando se trata de una madre que carece en absoluto de bienes de fortuna.

En el primer colegio podría la madre visitarla a menudo, sentirse ambas más cerca; en el segundo, la separación sería casi completa. Y una medida de tal naturaleza no es posible tomarla sin escuchar a la madre, especialmente cuando da noticia de su oposición al ser notificada de la solicitud.

Anulada la orden de junio 19, 1939, y señalado día para oír a las partes sobre la petición de junio 6, tendrá el juez de distrito una oportunidad mayor para actuar a conciencia, para juzgar si tal vez sería mejor para el bienestar de la niña, tan pequeña aún, que vaya, como indicó la madre en la vista de mayo 22, 1939, de externa al Colegio de la Inmaculada en Santurce y continúe viviendo, con la pensión razonable, al lado de la madre, recibiendo de tal modo al par que la luz de la instrucción, el afecto, el cuidado y el calor maternos que tanta falta hacen especialmente a su edad.

No debe perderse de vista al actuar en estos casos cuán honda es la huella de tristeza que deja para toda la vida en el alma de un hijo el hecho de la separación forzada de sus padres. Para que el bienestar del hijo justifique la medida, debe tratarse de casos serios, graves, en que se tema que reciba ejemplos corruptores o esté sometido a un régimen cruel o deprimente, y aquí de la moción de reconsideración y de la prueba tal como fué apreciada por el propio juez sentenciador no aparecen situaciones semejantes. Sólo pobreza que exige privaciones pero que no daña necesariamente si que a veces dignifica, es lo que se advierte, y falta de buena orientación educativa, que podría tal vez obviarse en la forma indicada.

Nada revela en los autos prejuicio por parte del juez sentenciador, al contrario, el mejor deseo de acertar, de suerte

que una nueva consideración del asunto por su parte constituye una garantía de justicia para todos los intereses envueltos.

*En tal virtud se revisa y anula la repetida resolución de junio 19, 1939, y el caso se devuelve para ulteriores procedimientos de acuerdo con la ley.*

El Juez Asociado Sr. Travieso no intervino.