PATRICIA PRATT, demandante y apelante, *v.* ALBRECHT CURT REUTER, GLORIA REUTER, GLORIA E. DOMENECH y JORGE LANDRÓN, demandados y apelados.

Número 11453.

*Sometido:* 9 de noviembre de 1955. *Resuelto:* 31 de mayo de 1957.

▆▆▆▆▆▆▆▆▆

---

*Córdova & González,* abogados de la apelante; *Oscar Souffront, Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella, Celestino Morales, Jr.,* y *Elí B. Arroyo,* abogados de los apelados.

PER CURIAM: La apelante Patricia Pratt contrajo matrimonio con Jorge Landrón en el Estado de Florida el día 15 de mayo de 1946 y en dicho matrimonio procrearon una hija llamada Patricia Gloria Landrón, quien nació el día 22 de mayo de 1949.

En 29 de enero de 1951 la Corte de Circuito del Condado de Dade dictó una sentencia de divorcio a favor del allí demandante Jorge Landrón por la causal de crueldad extrema. Dicha sentencia incluía, entre otros, los siguientes pronunciamientos: (*a*) concedió la custodia exclusiva de la menor

Patricia Gloria, a la sazón de 20 meses de edad, a su madre, aquí apelante; (b) prohibió el traslado de dicha menor fuera del Condado de Dade, Estado de Florida, y, (c) la corte retuvo jurisdicción a los fines de dictar cualesquiera órdenes que pudieran ser necesarias relativas a los alimentos futuros de la madre demandada y al futuro bienestar, custodia, control y alimentos de la menor Patricia Gloria Landrón.

Para la fecha de este decreto la demandada vivía con su hermana Ann Dowling y con su hija Patricia Gloria en Miami Springs, Florida. El día primero de agosto de 1951, la menor fué trasladada a la casa de sus abuelos maternos en Denver, Estado de Colorado, sin autorización de la Corte de Circuito del Condado de Dade y en violación del mencionado decreto de divorcio. Dos días después la demandada Patricia trasladó también su residencia a la casa de sus padres en Denver.

Posteriormente, y a solicitud de Jorge Landrón, la Corte de Circuito del Condado de Dade procedió a enmendar, en virtud de un segundo decreto de fecha 29 de enero de 1952, el decreto original de divorcio, concediendo esta vez la custodia de la menor Patricia Gloria a su padre, el señor Landrón. En virtud de este segundo decreto se ordenó a la madre Patricia Pratt que entregara la menor al padre de ésta; dejó vigente la disposición que prohibía el traslado de la menor fuera del Condado de Dade, y se reservó la jurisdicción de la corte para tomar aquellas medidas que fueren necesarias en el futuro en cuanto al bienestar, custodia, etc., de la niña.

En 17 de febrero de 1952, la apelante Patricia Pratt contrajo matrimonio con su actual esposo Elmer Pratt y establecieron su residencia desde esa fecha en Salt Lake City, Estado de Utah, donde fué a vivir desde entonces la menor Patricia Gloria Landrón. En el mes de septiembre de ese mismo año, los tres estaban de visita en Denver, Colorado. En los momentos en que Patricia y su hija se dirigían en automóvil a la parte baja de la ciudad de Denver, Jorge Landrón, auxiliado por otras personas y por medios violentos, arrebató

la menor a su madre, la llevó a Florida y de allí a esta Isla donde arribó el día 27 de septiembre de 1952. Desde entonces dicha menor reside con su tía-abuela doña Gloria Domenech, en la ciudad de Mayagüez.

Alrededor de un año después, o sea, en 23 de septiembre de 1953, Patricia Pratt interpuso el presente recurso de hábeas corpus ante el Tribunal Superior de Puerto Rico, contra Albrecht Curt Reuter, Gloria Reuter, Gloria E. Domenech y Jorge Landrón.(1)   En su petición la demandante alegó que después de haber obtenido la custodia de su hija Patricia Gloria Landrón, quien cuenta 4 años de edad, mediante el decreto de divorcio del Tribunal Superior de Dade County, Florida, el padre de la niña, allá para septiembre de 1952, le había arrebatado a su hija mediante el uso de fuerza y violencia, en Denver, Colorado, desde donde la trajo a la casa de la señora Gloria E. Domenech, en Mayagüez, Puerto Rico, solicitando la peticionaria que el Tribunal proceda a devolverle la custodia de su hija.

Los demandados alegaron, en síntesis, que el primer decreto de divorcio de la Corte de Florida fué luego enmendado por otro, en virtud del cual dicha corte privó a la demandante de la custodia de su hija; que la niña vive bajo el cuidado y en la residencia de la demandada Gloria E. Domenech en Mayagüez, quien es tía del codemandado Landrón; que en dicha residencia vive también la madre de éste; y que el bienestar de la niña por razones que se detallan en la contestación, requiere que ella siga viviendo bajo la custodia de doña Gloria E. Domenech.

Celebrado el juicio en que ambas partes presentaron su prueba, la Sala de Mayagüez del Tribunal Superior, dictó sentencia declarando sin lugar la solicitud de hábeas corpus y

(1) El recurso fué interpuesto ante la Sala de San Juan y más tarde fué trasladado a la Sala de Mayagüez de dicho Tribunal. A solicitud de los demandados y con el allanamiento de la demandante fueron eliminados como partes demandadas Albrecht Curt Reuter y Gloria Reuter, continuándose el caso ante dicha Sala contra los demandados Gloria E. Domenech y Jorge Landrón.

disponiendo entre otras cosas, que la menor Patricia Gloria Landrón permaneciera bajo la custodia de la codemandada Gloria E. Domenech. Dicha sentencia está basada en conclusiones de hecho y de derecho. Entre las de hecho figuran las siguientes:

"15.—A la fecha del decreto original, 29 de enero de 1951, la peticionaria residía en su casa de Miami Springs, Florida, donde permaneció hasta el 2 de agosto de 1951, cuando abandonó el hogar y fué a pasar el resto de ese día y por la noche al Miami Airways Hotel, sito en 36th Street, Miami, Florida. Al otro día, el 3 de agosto, se trasladó a Denver, Colorado, a la casa de sus padres.

"16.—La niña vivió en compañía de la aquí peticionaria y de Ann Dowling hermana de ésta, en Miami Springs, Florida, hasta el día 1 de agosto de 1951 en cuya fecha la mencionada tía se llevó la niña de la casa trasladándola a la residencia de los abuelos maternos de la menor en Denver, Estado de Colorado. Dicho traslado se hizo en violación de la orden expresa incluída en la sentencia de divorcio y sin que en forma alguna se solicitara permiso de la corte a ese efecto; y sin que tampoco, en fecha anterior ni posterior al traslado la aquí peticionaria, o persona alguna a su nombre, notificara a la Corte de Circuito del Condado de Dade del hecho del traslado ni de las razones que pudo haber tenido para permitir que su hermana sacara la niña del Estado de Florida.

"17.—Según aparece del informe del *master* que sirvió de base para modificar la orden sobre custodia de la menor, y según se probó a satisfacción de este Tribunal por la prueba presentada ante nos por los demandados, en los meses que siguieron al decreto de divorcio, cuando ya la demandante había obtenido la custodia de su hija (enero 29 de 1951), y especialmente en los meses de junio y julio de 1952, la demandante incurrió frecuentemente en prolongados períodos de bebelatas, llegando en ocasiones hasta un completo colapso después de varios días de exceso en el uso de bebidas alcohólicas. Con anterioridad al divorcio, según aparece del informe rendido por el *master* en el juicio de divorcio, así como de la prueba que tuvimos ante nuestra consideración, se desprende que la vida de la demandante en estos años estuvo repleta de borracheras desordenadas, acompañadas de infidelidades conyugales, excesos sexuales, arrestos, escándalos y otros pormenores.

"18.—El Tribunal estima que esta conducta de la peticionaria después del decreto de divorcio, considerada a la luz de sus antecedentes y de la prueba pericial no controvertida presentada por los demandados, es la de una persona adicta al uso excesivo de bebidas alcohólicas con los rasgos característicos de un alcohólico crónico sin psicosis, o sea, un caso de alcoholismo crónico de carácter psicopático, cuya conducta indudablemente resulta perjudicial al ambiente que debe rodear el crecimiento y desarrollo físico, moral y emocional de una niña de tan tierna edad como la que está envuelta en este litigio.

"19.—La prueba pericial no controvertida establece que las siguientes son características de la personalidad del alcohólico crónico sin psicosis, aunque no todas concurren necesariamente en cada caso: Tiene tendencias anti-sociales de conducta, es un ofensor habitual de la ley; carece de perseverancia y de capacidad para aprender por las experiencias de la vida; tiene inestabilidad ocupacional; sufre de episodios de coma y semicoma alcohólica; puede dejar de beber ante objetivos inmediatos para caer nuevamente en el vicio después de conseguirlos; cree no necesita tratamiento médico; tiende a proyectar mecanismos de agresividad y siente placer en mortificar a las personas que la rodean; cae en excesos sexuales y en perversiones sexuales; es tipo de personalidad contradictoria; es inconsistente en sus actitudes morales, tiende a mentir con facilidad y con frecuencia; tiene tendencias piromaníacas; sufre de un sentido de frustración, de inseguridad y de inestabilidad emocional, y es de temperamento irascible, y dado a explosiones temperamentales por cuestiones triviales.

"20.—El alcoholismo crónico sin psicosis es una enfermedad de carácter constitucional de muy difícil curación, ya que obedece a deficiencias de personalidad, y su tratamiento, que exige reclusión sanatorial, no puede juzgarse en sus resultados hasta transcurridos varios años desde que la persona se somete a tratamiento. La peticionaria nunca se ha sometido a tratamiento médico en relación con uso de bebidas alcohólicas.

"21.—La evidencia ofrecida sobre los actuales hábitos de moderación de la peticionaria en el uso de bebidas alcohólicas, consistente exclusivamente en el testimonio de la propia demandante y en el testimonio de su actual esposo, no convencen al Tribunal de que pueda confiársele el cuidado de su hija ya que la prueba demuestra que si algunas veces la peticionaria ha logrado sobreponerse a sus excesos en el uso del licor en ocasiones en que

ha tenido objetivos inmediatos que lograr, ésta luego ha recaído en nuevos períodos de excesos alcohólicos tan pronto logra su objetivo, o pierde interés en el mismo.

"22.—La aquí peticionaria conoció a su actual esposo el Sr. Elmer Pratt el día 5 de diciembre de 1951, y ambos se casaron el día 17 de febrero de 1952, estableciendo su residencia desde esa fecha en Salt Lake City, estado de Utah, a donde fué a vivir desde entonces la menor Patricia Gloria Landrón. El Sr. Pratt es padre de tres hijos de 26, 20 y 17 años de edad respectivamente, ninguno de los cuales vive en su compañía en la actualidad, y tiene además un hijo de su actual matrimonio con la peticionaria, nacido el día 14 de septiembre de 1953.

"23.—El día 23 de septiembre de 1952 la niña se encontraba en compañía de su madre y su padrastro en la ciudad de Denver, Colorado y desde allí fué trasladada a Puerto Rico, por su padre, el demandado Jorge Landrón, después de habérsela quitado por medios violentos a su madre en una calle de dicha ciudad, en ocasión en que la demandante daba una vuelta con la niña en su automóvil.

"24.—La niña llegó a la Isla el día 27 de septiembre de 1952 y reside desde entonces en la casa de su tía-abuela, la Sra. Gloria Domenech, en la ciudad de Mayagüez. Y aunque el demandado Landrón no obtuvo orden judicial previa autorizándolo a sacar la niña de Florida, notificó al Juez de la Corte del Condado de Dade su propósito de traerla a Puerto Rico.

"25.—El mismo día de su arribo a Puerto Rico, la niña Patricia Gloria Landrón fué sometida a un examen físico por el pediatra, Dr. Víctor Skerret. Dicho examen médico demostró que la niña estaba padeciendo de un estado de malnutrición y una condición física deplorable, con evidencia de catarros frecuentes. Dicha condición era de carácter crónico y no agudo y la misma existía desde varios meses antes a la fecha del examen. De haber continuado desatendido este estado de salud hubiera habido el peligro de que estas afecciones crónicas, unidas a la consiguiente baja en su resistencia, hubiesen expuesto a esta niña al peligro de enfermedades más serias.

"26.—La menor fué sometida a tratamiento y a otros exámenes médicos en fechas subsiguientes, el último de los cuales se efectuó el día 27 de septiembre de 1953. El mismo demostró que las afecciones de carácter crónico habían desaparecido, así como la evidencia del padecimiento de catarros frecuentes que mostraba la niña al llegar a la Isla. Durante su estadía en

Puerto Rico el progreso en la condición física de la niña ha sido notable y han sido factores determinantes para lograrlo el cuido que se le ha dispensado a la niña en el hogar de la Sra. Gloria Domenech, el clima de Puerto Rico y el hecho de que se han seguido las instrucciones del médico. En la actualidad la niña ha alcanzado ya la normalidad en cuanto a su peso y su estatura, goza de buen estado de salud, y se siente contenta y feliz dentro del ambiente en que vive.

"29.—Se ha probado que la demandada Gloria Domenech vive en Mayagüez con su esposo, su hermana, que es la madre del codemandado Jorge Landrón, y la menor **Patricia Gloria Landrón**. Su hogar está situado en una residencia amplia, con todas las comodidades necesarias, y ella está en condiciones económicas de proveer en forma adecuada para el cuidado y educación de la niña. Durante el tiempo que la menor ha estado residiendo en ese hogar se le ha rodeado del cariño, cuidado y atenciones necesarias a su edad y estado de salud. La codemandada Gloria Domenech ha expresado su disposición de continuar atendiendo a las necesidades presentes y futuras de su sobrina, así como a su educación, y las excepcionales cualidades intelectuales y morales de la Sra. Domenech, unidas a su bondadosa disposición para con la niña, la hacen una persona indiscutiblemente cualificada para confiársele el cuidado de esta niña."

En sus conclusiones de derecho el tribunal a quo resolvió (1) que la sentencia de divorcio de 29 de enero de 1951 dictada por la Corte de Circuito del Condado de Dade, Estado de Florida, le merecía plena validez y reconocimiento (*"full faith and credit"*) y la misma se consideraba cosa juzgada (*res judicata*) entre las partes en dicha acción en cuanto a todas las cuestiones que tuvo ante sí, que consideró y resolvió el tribunal de Florida; (2) que el segundo decreto de dicho tribunal enmendando el original era válido y le merecía pleno reconocimiento, y (3) que los Tribunales de Puerto Rico tienen facultad para enmendar un decreto sobre custodia de un menor dictado por los tribunales de otro Estado, siempre y cuando existan hechos nuevos que así lo justifiquen.

En este recurso de apelación la demandante-apelante señala la comisión de seis errores. Por el primero de ellos se impugna la jurisdicción del tribunal a quo para decidir a qué

persona correspondía la custodia de la menor Patricia Gloria
Landrón.   Su argumento, según lo entendemos, es que el
Tribunal Superior de Puerto Rico carecía de jurisdicción para
resolver sobre la custodia de la menor porque ésta nunca
estuvo domiciliada en Puerto Rico; que de acuerdo con el
primer decreto de divorcio dictado por el Tribunal de Cir-
cuito del Condado de Dade, Florida, cuya validez no está en
discusión, la custodia de dicha menor corresponde a su madre,
cuyo domicilio está en el Estado de Utah, y como consecuencia,
ese es también el domicilio de la menor, por lo que el Tribunal
Superior no tenía otra función en el recurso de hábeas corpus,
que la de ordenar que la niña volviese a la custodia de su
madre.   Arguye además que aceptando que el segundo decreto
del Tribunal de Florida modificando el primero y concediendo
la custodia de la menor a su padre fuera válido, cosa que
niega, entonces la menor tendría su domicilio en el Estado de
Florida, que es el domicilio de su padre.   En apoyo de su
contención la apelante cita la doctrina expuesta en la sec. 117
de *"Restatement, Conflicts of Law"*, y el caso de Oregon, *"Ap-
plication of Lorenz"*, 241 P.2d 142 (1952), en reconsideración
*Ex parte Lorenz*, 242 P.2d 200 (1952),(²) que adopta dicha
doctrina, la que se expone en la siguiente forma:

---

(²) En el caso de *Lorenz* según lo sintetiza la apelante, una pareja se
divorcia en Indiana, donde ambos residen y el tribunal otorga la custodia
a la madre.   La madre permite a los niños pasar unos días con su padre en
Illinois.   Aprovechándose de la ocasión, el padre los retiene y eventual-
mente se traslada con ellos a Oregon.   Al tiempo la madre los localiza en
Oregon y acude ante un tribunal de ese estado con un procedimiento de
hábeas corpus.   El tribunal inferior asume jurisdicción para decidir a
quién corresponde la custodia y, encontrando que las circunstancias han
cambiado desde que se emitiera el decreto del Tribunal de Illinois, otorga
la custodia de los niños al padre.   El Tribunal Supremo de Oregon decidió
(1) que de tener jurisdicción para ello hubiera estado justificado el juez al
concederle la custodia de los niños al padre, y (2) que el tribunal inferior
carecía de jurisdicción para resolver ese punto por lo que los niños debían
ser devueltos a la parte que obtuvo la custodia en el pleito de divorcio.   El
*ratio decidendi* de esta decisión fué que la cuestión relacionada con el bien-
estar de los menores y la consiguiente determinación de su custodia única-

"Un Estado puede ejercer jurisdicción a través de sus Cortes para determinar la custodia de niños o para crear el *status* de tutor (guardian) de la persona únicamente si el domicilio de la persona puesta bajo custodia o tutela (guardianship) está dentro del Estado."

Esta teoría de la jurisdicción exclusiva a base del domicilio del menor fué creada por el Profesor Beale. (³)    Aunque fué aceptada por *Restatement* (⁴) tal como aparece expuesta en el caso de Lorenz, supra, puede decirse que en la actualidad, la doctrina y la jurisprudencia se niegan a aceptar que el domicilio del menor es la única base de jurisdicción sobre su per-

---

mente podía ser resuelta por un tribunal en el domicilio de los menores. Surge como corolario que si un menor sujeto a custodia bajo un decreto válido de las cortes de un Estado, es trasladado ilegalmente a otro Estado por otra persona que no es el custodio, los tribunales de este último estado se declaran sin jurisdicción para resolver la cuestión relacionada con el bienestar del menor y se limitan a entregar al menor a la persona que tiene su custodia legal, dando así entera fe y crédito al decreto del otro Estado. *Ex parte Mullins*, 174 P.2d 790 (Wash. 1946) ; . *State ex rel. Marthens* v. *Superior Court*, 169 P.2d 626 (Wash. 1946) ; *Jones* v. *McCloud*, 142 P.2d 397 (Wash. 1943). Como bien apunta la apelada, aunque algunos autores aprueban esta doctrina, que algunas cortes la adoptan para desalentar o castigar conducta ilegal en violación de un decreto de custodia de otro Estado (Ehrenzwerg, *Interstate Recognition of Custody Decrees*, 51 Mich. L. Rev. 345, 363–365 y 4 A.L.R.2d 7, 14 y 15), la mayoría de las cortes rechazan esa regla (que a veces es llamada como la regla *"clean hands"*) como impedimento jurisdiccional. *Hilton* v. *Crawley*, 41 N.W.2d 60, 70 (Iowa 1950) ; *Di Giorgio* v. *Di Giorgio*, 13 So.2d 596 (Fla. 1943) ; *Wicks*. v. *Cox*, 208 S.W.2d 876 (Tex. 1948) ; *Sheehy* v. *Sheehy*, 186 Atl. 1, 3 (N. H. 1930) ; *White* v. *White*, 86 Atl. 353 (N. H. 1913) ; . *Commonwealth* v. *Daven*, 148 Atl. 524 (Pa. 1930) ; 107 A.L.R. 642–645 (1933) y 4 A.L.R.2d 7, 22–24, 41–47, 54–62 (1949).

(³) Véase su tratado sobre "The Conflict of Laws" (1935).    Esta teoría del Profesor Beale se basa en que la custodia envuelve una cuestión de *status* del niño, similar a la cuestión de reconocimiento, legitimación y adopción, y que en consecuencia compete a los tribunales del domicilio del menor determinarla.    Este principio, según sostienen algunas autoridades, es cuestionable pues la custodia de un menor es incidental a las relaciones paterno-filiales y de naturaleza provisional ya que puede cambiar de la noche a la mañana si las circunstancias indican que así lo requiere el bienestar del menor.    Véase Stumber, *"The Status of Children in the Conflict of Laws"*, 8 Chi. L. Rev., 42, y 22 So. Cal. Law. Rev. 293.

(⁴) *Restatement, Conflict of Law*, sec. 117 (1934).

sona.(⁴ᵃ)    La corriente moderna en la jurisprudencia reconoce que tienen jurisdicción sobre la custodia, (1) ,las cortes del estado donde. real y efectivamente reside el menor (*physically present–present in–within–the state*), y (2) las cortes que tienen jurisdicción *in personam* sobre los padres del menor si éste se encuentra, aun accidentalmente, dentro del territorio del estado.(⁵)

En este caso hemos visto que el tribunal a quo adquirió jurisdicción *in personam* sobre los padres de la menor Patricia

---

(⁴ᵃ) Véase Ehrenzweig, *Interstate Recognition of Custody Decrees*, 51 Mich. L. Rev., págs. 345, 347.

(⁵) Physically Present, Present in, within—the state *Weiner* v. *Weiner*, 149 N.Y.S.2d 362, 367 (N. Y. 1956); *Kallet* v. *Fitzpatrick*, 131 N.Y.S.2d 9, 11 (N. Y. 1954); *Forbell* v. *Forbell*, 93 N.Y.S.2d 1, 3 (N. Y. 1949); *Cadoo* v. *Cadoo*, 58 N.Y.S.2d 634, 635 (N. Y. 1945); *People* v. *Van Dyk*, 33 NY.S.2d 766, 770 (N .Y. 1942); *Finlay* v. *Finlay*, 148 N. E. 624, 625 (N. Y. 1925); *Smith* v. *Smith*, 45 A.2d 879, 880 (Del. 1946); *Pelton* v. *Halverson*, 35 N.W.2d 759, 762 (Iowa 1949); *In re Harris*, 89 A.2d 615, 616 (Md. 1952); *Turner* v. *Turner*, 169 Atl. 873 (N. H. 1934); *Rogers* v. *Commonwealth*, 11 S.E.2d 584, 586 (Va. 1940); *Ex parte Kosh*, 233 P.2d 598, 600 (Cal. 1951); *Clemens* v. *Kinsley*, 239 P.2d 266, 270 (Idaho 1951); *Starr* v. *Starr*, 263 P.2d 675, 677 (Cal. 1954); *Wear* v. *Wear*, 285 Pac. 606, 615–616 (Kan. 1930); *In re Smith*, 67 A.2d 478, 479 (N. J. 1949); *Avenier* v. *Avenier*, 216 S.W.2d 638, 642 (Tex. 1948); *Worden* v. *Worden*, 224 S.W.2d 187, 190 (Tex. 1949); *State* v. *French*, 188 S.W.2d 603, 604 (Tenn. 1945); *Ex parte White*, 16 So.2d 500, 502 (Ala. 1944); *González-Fantony* v. *Fantony*, 105 A.2d 909, 912 (N. J. 1954); *People* v. *Wingate*, 33 N.E.2d 467, 471 (Ill. 1941); *Conley* v. *Conley*, 87 N.E.2d 153, 154 (Mass. 1949); *Fantony* v. *Fantony*, 122 A.2d 593, 598 (N. J. 1956); *McMillin* v. *McMillin*, 158 P.2d 444, 446 (Colo. 1945); *Ritcher* v. *Harmon*, 90 S.E.2d 744, 748 (N. C. 1956); *Butler* v. *Butler*, 143 Atl. 471, 473 (N. H. 1928); *In re Pratt*, 18 N.W.2d 147, 152 (Min. 1945); *Kenner* v. *Kenner*, 201 S. W. 779, 782 (Tenn. 1918); *Halvey* v. *Halvey*, 330 U. S. 610, 617–18 (U. S. Supreme Ct. 1947); *Durfee* v. *Durfee*, 200 N. E. 395, 398 (Mass. 1936); *Wicks* v. *Cox*, 208 S.W.2d 876, 878 (Tex. 1948); *Goldsmith* v. *Salkey*, 112 S.W.2d 165, 167 (Tex. 1938); *State* v. *Ricketson*, 60 So.2d 88, 94 (La. 1952); *Eddy* v. *Staufer*, 37 So.2d 417, 418 (Fla. 1948); *Di Giorgio* v. *Di Giorgio*, 13 So.2d 596, 597–98 (Fla. 1943); *Sheehy* v. *Sheehy, et al.*, 186 Atl. 1, 3 (N. H. 1936); *Boone* v. *Boone*, 150 F.2d 153, 154 (D. C. 1945); Stansbury, *Custody and Maintenance Across State Lines*, 10 Law and Contemp. Prob. 819 (1944); 4 A.L.R.2d 10, 41–47 (1949); 9 A.L.R.2d 436–458; 58 Col. L. Rev. 630 (1956); 34 Geo. L. J. 105–108 (1946); 47 Mich. L. Rev. 705 (1949); 37 Va. L. Rev. 135 (1951); 80 U. of Pa. L. Rev. 713 (1932); 22 U. of Chi. L. Rev. 294 (1949); 22 So. Calif. L. Rev. 294 (1949); 53 Harv. L. Rev. 1025 (1940); 51 Mich. L. Rev. 345 (1953).

Gloria Landrón y sobre la codemandada Gloria E. Domenech. Además dicha menor se encuentra residiendo desde hace más de un año en la ciudad de Mayagüez. Aplicando la mejor doctrina en derecho, entendemos que el Tribunal Superior de Puerto Rico asumió correctamente jurisdicción para determinar la custodia de dicha menor. En cuanto a si los tribunales de otros estados tienen jurisdicción concurrente con los de Puerto Rico para resolver sobre la custodia de la susodicha menor, es cuestión que no tenemos que resolver ahora.[6]

En el segundo señalamiento la apelante alega que el Tribunal Superior cometió error al decidir que el segundo decreto del Tribunal de Florida es válido. Este supuesto error lo basa en que (1) la apelante no fué debidamente notificada de los procedimientos que se siguieron ante el Tribunal de Florida para enmendar el primer decreto de divorcio, y (2) que dicho tribunal carecía de jurisdicción sobre la menor por razón de que ésta tenía entonces su domicilio fuera del Estado de Florida.[7]

---

[6] Véase *Sampsell* v. *Sup. Ct.*, 197 P.2d 739 (Cal. 1948); Stansbury, *op. cit.*, págs. 830–832; 9 A.L.R.2d 434, 442.

[7] En cuanto a que el Tribunal de Florida retuvo jurisdicción para enmendar su primer decreto sobre custodia aun cuando la madre, en violación de dicho decreto, se llevó a la menor fuera del Estado de Florida, véase Stansbury, *op. cit.* 819, 827 (1944); *Kern* v. *Lindsey*, 30 S.E.2d 707, 709 (Va. 1944); *Van Gundy* v. *Van Gundy*, 56 N.W.2d 43, 45 (Iowa 1952); *Reynolds* v. *Reynolds*, 128 P.2d 172 y 134 P.2d 251 (Cal. 1943); *Hersey* v. *Hersey*, 171 N.E. 815 (Mass. 1930); *Fagan* v. *Fagan*, 42 A.2d 41 (Conn. 1945); *In re Blalock*, 64 S.E.2d 848 (N. C. 1951); *Hatch* v. *Hatch*, 192 Atl. 241 (N. J. 1937); *White* v. *Shalit*, 1 A.2d 765 (Me. 1938); *Ex parte State ex rel. McLaughlin*, 35 So.2d 507 (Ala. 1948); *Burkhardt* v. *Bachrach*, 225 S.W.2d 1022 (Tex. 1950); *Cowles* v. *Cowles*, 120 Atl. 76 (N. H. 1923); *White* v. *White*, 55 Atl. 739 (N. J. 1903); Monografías en 70 A.L.R. 526–532, 171 A.L.R. 1405–1413, 4 A.L.R.2d 7, 35–41, 93–96 (1949); 9 A.L.R.2d 434, 453–458 (1950); 27 C.J.S., sec. 317 (*a*), pág. 1187. Para la doctrina contraria a base de hechos distinguibles de los del presente caso, véase *People ex rel. Wagner* v. *Torrence*, 27 P.2d 1038 (Cal. 1933). En monografía en 4 A.L.R.2d 32–35 y 85–93; *Dorman* v. *Friendly*, 1 So.2d 734 (Fla. 1941); *State ex rel. Huhn* v. *Huhn*, 70 So.2d 391 (La. 1954); *Sanders* v. *Sanders*, 14 S.W.2d 458 (Mo. Appl. 1929, y casos citados en 4 A.L.R.2d 733; *State ex rel. Rasco* v. *Rasco*, 190 So. 510 (Fla. 1939).

Aunque el primer punto pareciera discutible, creemos que es innecesario detenernos a considerarlo. La razón es obvia. Si decidiéramos que por falta de la debida notificación a la apelante, el segundo decreto es nulo, ello en nada le beneficiaría, en vista de que ya hemos resuelto que el Tribunal Superior tenía jurisdicción para decidir sobre el bienestar, y por ende, sobre la custodia de la menor. Esto es así porque la prueba presentada por los demandados y creída por el tribunal sentenciador sostiene ampliamente la conclusión de que ha ocurrido un cambio de circunstancias desde la fecha del primer decreto de divorcio, en forma tal que justifica su modificación en lo que respecta a la custodia de dicha menor. Ese primer decreto, en lo que a la custodia de la menor respecta, no es cosa juzgada (*res judicata*) en Florida, ni en cualquier otra parte, excepto en cuanto a los hechos que tuvo ante sí y consideró el tribunal de Florida al dictarlo. *Halvey* v. *Halvey*, 330 U. S. 610; Note, *Decrees and Judgments Awarding Custody of Children of Florida;* 1 Univ. of Fla. L. Rev. 360. El peso de las autoridades se pronuncia en favor de esa doctrina. Véase *Díaz* v. *Corte*, 55 D.P.R. 421; *Chardón* v. *Corte*, 45 D.P.R. 621; 27 C.J.S., secs. 317 (*a*), pág. 185 y 317 (*b*), pág. 1188; 70 A.L.R., pág. 526; 4 A.L.R., págs. 41–42.

En su consecuencia, la prueba sobre hechos y circunstancias acaecidos después del primer decreto y antes de que se dictara el segundo, si es que este último era nulo por falta de jurisdicción, era pertinente y el Juez sentenciador pudo considerarla para decidir sobre el bienestar y custodia de la menor. Únicamente el demandado Jorge Landrón podría quejarse de que no se le diera por el Tribunal Superior entera fe y crédito a ese segundo decreto, volviéndose a pasar sobre la prueba que le sirvió de base, pero dicho demandado prefirió dejar al Tribunal Superior en completa libertad para resolver la controversia tomando en cuenta (1) el segundo decreto, y (2) todos los hechos y circunstancias acaecidos después del primer decreto. El error, por tanto, no fué cometido.

■■■■■ El tercer error se apunta como el cometido por el tribunal a quo al admitir evidencia sobre la conducta de la apelante Patricia Pratt con anterioridad al primer decreto de divorcio y al negarse a permitir a la demandante que interrogase a los testigos de los demandados sobre lo que éstos habían declarado en el pleito de divorcio en Florida. Por el cuarto señalamiento, que está relacionado con el anterior, se imputa error en la admisión del testimonio del doctor Julio Ortega quien "declaró a base de una pregunta hipotética formulada mayormente a base de datos de la historia pasada de la señora Pratt anteriores al decreto de divorcio en Florida."

En síntesis, la apelante se queja en estos dos errores de haber sido privada de la defensa de cosa juzgada (*res judicata*) porque (1) se admitió prueba sobre hechos relacionados con su conducta antes del decreto de divorcio, y (2) no se le permitió repreguntar a los testigos de los demandados, no para fines de impugnación, y sí para ilustrar la defensa de cosa juzgada.

No tiene razón. Alguna prueba de hechos anteriores al decreto de divorcio fué admitida sin la objeción de la demandante-apelante. Una vez planteada por ésta la defensa de cosa juzgada, el tribunal a quo se negó a recibir prueba sobre hechos anteriores al decreto de divorcio si éstos aparecían mencionados en las alegaciones, en los tres informes rendidos por el *Master* o en el propio decreto de divorcio y custodia de la corte de Florida.([8])

La dificultad de la contención de la apelante consiste en que el Tribunal Superior no basó la sentencia apelada en los hechos anteriores al decreto de divorcio, sino que por el contrario concluyó, a nuestro juicio correctamente que " . . . . a partir del decreto original en enero 29 de 1951, han surgido hechos nuevos relacionados con la custodia y el bienestar de

---

([8]) El tribunal a quo no tuvo ante sí la transcripción de la prueba que desfiló ante el *Master*.

la niñita Patricia Landrón que justifican plenamente que la demandante no tenga en la actualidad la custodia de su hija . . . ." Como bien arguye la parte apelada el tribunal a quo basó su determinación en la conducta de la apelante después del decreto de divorcio, en otros hechos ocurridos con posterioridad al divorcio y en la prueba pericial no controvertida presentada por los demandados sobre el alcoholismo crónico de carácter psicopático de que padece la apelante.

El tribunal sentenciador no podía considerar la prueba de hechos anteriores al decreto de divorcio para modificar, revisar o alterar el decreto de custodia original pero podía, según lo hizo en este caso, considerar dicha prueba en relación con la controversia de si hubo o no cambio en las circunstancias e igualmente pudo recibirla para interpretar o ilustrar los hechos subsiguientes que se adujeron para demostrar la incapacidad o falta de idoneidad de la apelante en el presente para tener el cuidado y custodia de su menor hija.(9)   Por otro lado casi toda la prueba de hechos anteriores al divorcio ya constaba en la prueba documental ofrecida en evidencia por la propia demandante-apelante.

La objeción al testimonio del Dr. Julio Ortega se funda en que en la pregunta hipotética que se le hiciera, estaban incluídos algunos hechos anteriores al decreto de divorcio. Según hemos dicho ya, muchos de esos hechos anteriores constaban en la prueba documental ofrecida por la apelante.   De todos modos el testimonio del indicado psiquiatra se contrae al estado mental y constitucional de la señora Pratt al *pre*-

---

(9) Véase *Sheehy* v. *Sheehy,* supra;   27 C.J.S., págs. 1196–1197; *Ganter* v. *Ganter,* 246 P.2d 923, 927 (Cal. 1952) ; *Ross* v. *Ross,* 5 P.2d 246, 249 (Colo. 1931) ; *Prouty* v. *Prouty,* 105 P.2d 295 (Colo. 1940) ; *Griffin* v. *Griffin,* 187 Pac. 598 (Or. 1920) ; *Crater* v. *Crater,* 67 Pac. 1049 (Cal.) *Foster* v. *Foster,* 68 P.2d 719 (Cal. App.) ; *Young* v. *Young,* 256 P.2d 1009 (Cal. App.) ; *Alley* v. *Alley,* 247 Pac. 301 (Utah 1926) ; *Drew* v. *Drew,* 186 S.W.2d 858 (Mo. 1945) ; *Davis* v. *Davis,* 192 S.W.2d 41 (Mo. 1945) ; *White* v. *White,* 24 So.2d 763 (Ala. 1945) ; *Padgett* v. *Padgett,* 27 So.2d 205 (Ala. 1946) ; *Conley* v. *St. Jacques,* 110 S.W.2d 1238 (Tex. Civ. App. 1937) ; *Pennington* v. *Pennington,* 195 S.W2d. 677 (Tex. Civ. App. 1946).

*sente* y no a una época anterior al susodicho decreto de divorcio. Sin embargo la opinión pericial del doctor debió basarse en una relación completa de la conducta de la apelante y de todos los síntomas de su enfermedad mental. No dudamos que el diagnóstico del perito, a base de hechos anteriores y posteriores al decreto de divorcio, es un hecho que la Corte de Florida no consideró ni tuvo ante sí. Por tanto, no constituyó error la admisión y consideración del testimonio del doctor Ortega.

■ Por el quinto señalamiento de error se ataca la admisión en evidencia del exhibit 8 de los demandados que es una carta suscrita por el señor Klaproth y encontrada por el demandado Landrón en la casa de la apelante en Miami Springs. No nos detendremos en este señalamiento. El error, de haberse cometido, no daría lugar a la revocación de la sentencia apelada.

Por el sexto y último señalamiento se imputa error al decidir que la apelante Patricia Pratt no debía tener la custodia de su hija.

■ Después de un cuidadoso estudio de todo el récord ante nos, hemos llegado a la conclusión que la sentencia apelada encuentra amplio apoyo en la prueba presentada durante el juicio, y en las doctrinas legales imperantes respecto al ejercicio por los tribunales de su poder de *parens patriae* para regular la custodia de los hijos menores de edad, atendiendo primordialmente al bienestar de éstos, según lo justifiquen todas las circunstancias envueltas en el caso. *Rodríguez* v. *Pagán*, 67 D.P.R. 345; *Santos* v. *Berdecía*, 73 D.P.R. 766; *Muñoz* v. *Torres*, 75 D.P.R. 507.

*Por las razones expuestas se confirma la sentencia apelada.*

El Juez Presidente Sr. Snyder y los Jueces Asociados Sres. Marrero y Saldaña no intervinieron.